UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHELE PAIGE,

      *Plaintiff*,

  v.

DIGITAL BUSINESS NETWORKS
ALLIANCE, INC., OFS PORTAL, LLC,
MCGINNIS LOCHRIDGE LLP, *and*
PHILLIP SCHMANDT,

      *Defendants*.

No. 24-CV-3169 (KMK)

ORDER & OPINION

---

<u>Appearances</u>:

Michele Paige
Orlando, FL
*Pro se Plaintiff*

Geoffrey William Heineman, Esq.
Ryanne Allene Hankla, Esq.
Jung Hyun Park, Esq.
Ropers, Majeski, Kohn & Bentley PC
New York, NY
*Counsel for Defendant Digital Business Networks Alliance, Inc.*

Evan Scott Weintraub, Esq.
Alexander Randazzo, Esq.
Wachtel & Missry, LLP
*Counsel for Defendant OFS Portal, LLC*

Howard Ian Elman, Esq.
Mioko Catherine Tajika, Esq.
Elman Freiberg PLLC
New York and Poughkeepsie, NY
*Counsel for Defendant McGinnis Lochridge LLP and Phillip Schmandt*

KENNETH M. KARAS, United States District Judge:

Michele Paige ("Plaintiff"), proceeding pro se, brings this Action against Digital Business Networks Alliance, Inc. ("DBNA"), OFS Portal, LLC ("OFS"), McGinnis Lochridge LLP ("McGinnis"), and Phillip Schmandt ("Schmandt") (together, "Defendants"), asserting multiple claims arising out of an alleged contract between Plaintiff and DBNA.  (*See generally* Second Am. Compl. ("SAC") (Dkt. No. 33).)  Specifically, Plaintiff alleges the following causes of action:  (1) wage claim against DBNA and OFS pursuant to New York Labor Law ("NYLL") §§ 193, 194; (2) final check claim against DBNA and OFS pursuant to NYLL §§ 193, 194; (3) breach of contract against DBNA and OFS; (4) detrimental reliance against DBNA and OFS; (5) quantum meruit against DBNA and OFS; (6) unjust enrichment against Defendants; (7) fraudulent conveyance against OFS, McGinnis, and Schmandt; (8) conversion/trover against OFS, McGinnis, and Schmandt; (9) defamation against OFS, McGinnis, and Schmandt; (10) intentional infliction of emotional distress against Defendants; (11) retaliation against DBNA and OFS pursuant to NYLL § 215; and (12) a New York "whistleblower law" claim against DBNA and OFS pursuant to NYLL § 740.  (*See generally id.*)  Before the Court are Motions to Dismiss (the "Motions") by DBNA, OFS, and McGinnis and Schmandt.  For the reasons below, Defendants' Motions are granted.

## I.  Background

### A.  Materials Considered

Plaintiff has attached 57 exhibits to her pleading.  (*See* Dkt. Nos. 30, 30-1 to -3.)  She references these exhibits repeatedly throughout the Second Amended Complaint.  (*See generally* SAC.)

"'When considering a motion to dismiss, the Court's review is confined to the pleadings themselves,' because 'to go beyond the allegations in the Complaint would convert the Rule 12(b)(6) motion into one for summary judgment pursuant to Rule 56.'" *Watson v. New York*, No. 22-CV-9613, 2023 WL 6200979, at *1 (S.D.N.Y. Sept. 22, 2023) (alterations adopted) (quoting *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002)). "Nevertheless, the Court's consideration of documents attached to, or incorporated by reference in the Complaint, and matters of which judicial notice may be taken, would not convert the motion to dismiss into one for summary judgment." *Id.*; *see also Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (explaining that "when ruling on Rule 12(b)(6) motions to dismiss," courts may "consider the complaint in its entirety . . ., documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" (internal quotation marks and citation omitted)); *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) ("In deciding a Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings[,] and matters of which judicial notice may be taken.'" (quoting *Samuels v. Air Transp. Loc. 504*, 992 F.2d 12, 15 (2d Cir. 1993))).

Additionally, when reviewing a complaint submitted by a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks and citation omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics and citation omitted), statements by the plaintiff "submitted in response to [a defendant's] request for a pre-motion

conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), "documents either in [the plaintiff's] possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation marks and citation omitted), and "[plaintiff's] opposition memorandum," *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997) (citing *Gil v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987)).

Because Plaintiff is proceeding pro se, the Court will consider the documents referenced in the Second Amended Complaint. *See Barkai v. Mendez*, 629 F. Supp. 3d 166, 175 (S.D.N.Y. 2022) (considering exhibits attached to pro se complaint when deciding motion to dismiss); *see also Floyd v. Rosen*, No. 21-CV-1668, 2022 WL 1451405, at *3 (S.D.N.Y. May 9, 2022) (considering exhibits attached to pro se opposition memorandum).

B.  Factual Background

The following facts are taken from Plaintiff's Second Amended Complaint and attached exhibits and are assumed to be true for the purposes of ruling on the instant Motions. *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

Plaintiff is a "citizen of Florida" and a minority owner and officer of Digital Financial Group, LLC ("DiFi"), a Delaware LLC with offices in New York, Connecticut, and Florida. (SAC ¶ 83.)

"DBNA grew out of the Federal Reserve's digital invoicing initiative." (*Id.* ¶ 79(a).) It is a "not-for-profit organization whose mission is to establish and operate an electronic delivery exchange network available for use by all commercial enterprises in the United States, which supports the digital delivery of electronic business documents . . . ." (Ex. 2 at 1.) DBNA's

bylaws provide that directors "may not receive compensation for their services as [d]irectors," and that officers "may [receive] compensation in a reasonable amount . . . for services rendered, but only as approved by the [b]oard of [d]irectors." (Ex. 48 §§ 4.21, 6.3.) Officers are elected by the board of directors "and shall consist of a President and Secretary," though the board may elect or appoint other officers as it deems necessary. (*Id.* § 6.1.)

Plaintiff began working on "the Federal Reserve's prolonged efforts to create an e-invoice exchange" at an unspecified time. (*See* SAC ¶ 11.) On September 19, 2022, Plaintiff sent Jim Taylor ("Taylor"), former interim President of DBNA, a "draft of the model for the Oversight Entity." (*See* Exs. 21–22.)[1] Plaintiff characterizes this as a budget that DBNA used "for their planning purposes." (SAC ¶ 35.)

On April 19, 2023, Plaintiff emailed Taylor "lament[ing] [her] ability to attain a Board seat." (*Id.* ¶ 11.) On April 20, 2023, Plaintiff emailed Todd Albers applying to be DBNA's President and Treasurer. (*See id.* ¶ 13.) On April 21, 2023, Plaintiff again emailed applying to be DBNA's Treasurer or Secretary. (*See id.* ¶ 14.) On April 23, 2023, the DBNA Board elected Plaintiff to the positions of Treasurer and Secretary. (*See id.* ¶ 15.) Plaintiff verbally accepted her election to the positions via telephone. (*See id.* ¶ 17.) Plaintiff was in New York from at least April 19, 2023, through April 23, 2023. (*See id.* ¶ 18.) As Treasurer/Secretary, Plaintiff "created DBNA's financial plan, managed its finances, collected its initial membership fees, and participated in all of its planning and development efforts." (*Id.* ¶ 99.) Plaintiff "devoted at least [500] hours to DBNA's business." (*Id.* ¶ 96.) Plaintiff was never paid for her work as Treasurer and Secretary. (*Id.* ¶ 186.) Plaintiff alleges that, in conversations with Taylor and Chris Welsh

---

[1] Exhibit 22 is Plaintiff's draft model or budget. It is not produced in a readable form, as it is too small and pixelated to make out specific line items or amounts. (*See* Ex. 22.)

("Welsh"), she "stated—and believed that they had agreed—that [she] would be paid [her] market wages whenever DBNA had the budget to do so."[2]  (*Id.* ¶ 131.)  Plaintiff alleges that the budget she drafted in 2022 included line items for her compensation.  (*Id.* ¶ 107.)

On May 3, 2023, Plaintiff exchanged emails with Taylor and DBNA Board Chairman Welsh regarding her signing DBNA's bylaws.  (*See* Exs. 46, 47.)  Occasionally, Schmandt would act as Secretary during DBNA board meetings.  (*See* Ex. 14 (indicating that Schmandt acted as Secretary at the April 23, 2023, board meeting); Ex. 31 (indicating that Schmandt acted as Secretary at the May 16, 2023, board meeting, at which Plaintiff was also present).)  Around this time, DBNA retained McGinnis as counsel.  (*See* Ex. 31 at 1.)  Schmandt was paid $570 an hour for work related to DBNA.  (*See* SAC ¶ 109.)  In October 2023, DBNA issued a request for proposal ("RFP") "to its members to see if [they] would like to quote to provide share services management to [DBNA]."  (*See* Ex. 1.)  DiFi submitted a proposal, (*see* Ex. 3 (a November 3, 2023, email sending DiFi's proposal to Taylor, Welsh, and Schmandt); Ex. 4 (DiFi's RFP response)), but was not selected, (*see* SAC ¶ 90).

On January 11, 2024, Mimi Stansbury ("Stansbury"), an OFS employee, emailed Plaintiff requesting information regarding DBNA's bank account and that Plaintiff facilitate Stansbury's receiving access to the account.[3]  (*See* Ex. 40.)  Stansbury identified herself as DBNA's Treasurer.  (*See id.*)  By resolution dated January 16, 2024, the DBNA Board voted to remove "all prior officers," that is, Taylor and Plaintiff, and appointed Welsh as President and COO and Stansbury as Treasurer and Secretary.  (*See* SAC ¶ 93; Ex. 34.)  On January 17, 2024, Plaintiff

---

[2] Welsh was, until March 1, 2024, CEO of OFS.  (SAC ¶ 92(a).)

[3] Stansbury succeeded Welsh as OFS CEO in March 2024.  (*See* Ex. 16.)

emailed Welsh, noting that she "[didn't] think that this takeover/handoff was handled appropriately or legally," that she "certainly didn't intend to volunteer so many hours without any compensation," that "everyone understood that we would be compensated fairly and reasonably as soon as [DBNA] launched its operations," and that she was "particularly troubled that [DBNA] saw fit to pay its general counsel, but not [her], the treasurer and secretary." (Ex. 33 at 1.)  In response, Welsh sent Plaintiff a copy of the board resolution removing Plaintiff from the positions of Treasurer and Secretary.  (*See id.*)  On January 23, 2024, Stansbury renewed her request for bank account information.  (*See* Ex. 40.)  On January 30, 2024, Schmandt emailed Plaintiff and copied Taylor and Welsh, noting that, "as a former officer of DBNA and a signatory on the DBNA Bank Account, [Plaintiff] [had] a continuing duty to protect the assets of DBNA and under no circumstances may [she] use those assets for personal benefits." (*See* Ex. 11 at 1.)  Plaintiff's "attempt[] to withdraw funds . . . or using [her] status as signatory on the account as a means to leverage [her] personal position or extract concessions from DBNA . . . would be wrongful and would expose [her] to potential liability to DBNA." (*Id.*)

C.  Procedural Background

On March 21, 2024, Plaintiff initiated this Action in Westchester County Supreme Court. (*See* Dkt. No. 12-1.)[4]  On April 25, 2024, Defendants removed the Action to this Court.  (*See*

---

[4] Plaintiff was represented in state court by her husband, Christopher Paige, as indicated by his signature on the summons filed in Westchester County Supreme Court.  (*See* Dkt. No. 12-1 at 3.)  Plaintiff claims that her husband, "who is having issues with his health, . . . no longer represents [her] as [she] ha[s] chosen to represent [her]self."  (SAC ¶ 2.)  The Court takes Plaintiff at her word, but notes the strong similarity in tone and style between the Second Amended Complaint and emails drafted by Christopher Paige prior to this Action in which he attempted to negotiate with Defendants, (*see, e.g.*, Ex. 5 (emails between Christopher Paige and Schmandt); Ex. 20 (emails between Christopher Paige and a McGinnis partner); Ex. 35 (same)).

Dkt. No. 12.)  Plaintiff filed multiple complaints, (*see* Dkt. Nos. 15, 30), before filing the

operative Second Amended Complaint on May 21, 2024, (*see* SAC).  On May 24, 2024, the

Court set a briefing schedule on the Motions.  (*See* Dkt. No. 35.)  Plaintiff filed multiple motions

for jurisdictional discovery, (*see* Dkt. Nos. 28, 32, 37, 38), and the Court noted that it would

address Plaintiff's requests in its decision on the Motions, (*see* Dkt. No. 41).[5]

On June 24, 2024, Defendants filed their Motions.  (*See* McGinnis Not. of Mot. (Dkt.

No. 46); Decl. of Phillip Schmandt in Supp. of Mot. ("Schmandt Decl.") (Dkt. No. 48);

McGinnis' Mem. in Supp. of Mot. ("McGinnis Mem.") (Dkt. No. 49); DBNA Not. of Mot. (Dkt.

No. 50); DBNA's Mem in Supp. of Mot. ("DBNA Mem.") (Dkt. No. 58); Decl. of Chris Welsh

in Supp. of Mot. ("Welsh Decl.") (Dkt. No. 57); OFS Not. of Mot. (Dkt. No. 52); OFS' Mem. in

Supp. of Mot. ("OFS Mem.") (Dkt. No. 55); Decl. of Ryanne A. Hankla in Supp. of Mot.

("Hankla Decl.") (Dkt. No. 56); Decl of. Mimi Stansbury in Supp. of Mot. ("Stansbury Decl.")

(Dkt. No. 54).)  Three days later, Plaintiff filed a Motion for Summary Judgment, (Dkt. Nos. 61,

62, 63, 64), and another complaint, (Dkt. No. 65).  On July 3, 2024, the Court construed

Plaintiff's filings as requesting leave to file her Motion for Summary Judgment and held the

request in abeyance pending its ruling on Defendants' Motions.  (*See* Dkt. No. 66.)  Between

July 5 and July 11, 2024, Plaintiff filed her Opposition.  (*See* Mem. in Opp. to DBNA's Mot.

("Pl's DBNA Opp.") (Dkt. No. 71); Mem. in Opp. to OFS' Mot. ("Pl's OFS Opp.") (Dkt.

---

[5] On May 31, 2024, Defendants filed a letter in which they asserted that Plaintiff's requests for jurisdictional discovery were not "actual motion[s]" and requested that they be considered only in opposition to Defendants' Motions to Dismiss.  (*See* Dkt. No. 39.)  Plaintiff responded with a "Letter Motion to Strike," arguing that Defendants had failed to respond to her requests and that the Court should strike their "late response."  (*See* Dkt. No. 43.)  On June 3, 2024, the Court again noted that it would address Plaintiff's requests in its decision on Defendants' Motions to Dismiss.  (Dkt. No. 40.)

No. 73); Mem. in Opp. to McGinnis' Mot. ("Pl's McGinnis Opp.") (Dkt. No. 75).)  On August 7,

2024, Defendants replied.  (*See* McGinnis' Reply in Supp. of Mot. ("McGinnis Reply") (Dkt.

No. 82); OFS' Reply in Supp. of Mot. ("OFS Reply") (Dkt. No. 84); DBNA's Reply in Supp. of

Mot. ("DBNA Reply") (Dkt. No. 85).)

On August 22, 2024, Plaintiff requested leave to conduct third-party discovery.  (*See* Dkt.

No. 86.)  The Court denied this request as untimely.  (*See* Dkt. No. 87.)

## II.  Discussion

### A.  Standard of Review

On a Rule 12(b)(2) motion, the plaintiff has the burden of establishing that the court has

jurisdiction over the defendant.  *See In re Magnetic Audiotape Antitrust Litig.,* 334 F.3d 204, 206

(2d Cir. 2003) (per curiam); *see also Bayshore Cap. Advisors, LLC v. Creative Wealth Media*

*Fin. Corp.*, 667 F. Supp. 3d 83, 116 (S.D.N.Y. 2023) (same).  However, "prior to discovery, a

plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good

faith legally sufficient allegations of jurisdiction, i.e., by making a prima facie showing of

jurisdiction."  *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998) (alteration adopted)

(italics, citation, and quotation marks omitted); *see also Porina v. Marward Shipping Co.*, 521

F.3d 122, 126 (2d Cir. 2008) ("Where . . . a district court relies on the pleadings and affidavits,

and chooses not to conduct a full-blown evidentiary hearing, plaintiffs need only make a prima

facie showing of personal jurisdiction over the defendant." (citation and quotation marks

omitted)).  "[A] prima facie showing of jurisdiction does not mean that [the] plaintiff must show

only some evidence that [the] defendant is subject to jurisdiction; it means that [the] plaintiff

must plead facts which, if true, are sufficient in themselves to establish jurisdiction."

*Bellepointe, Inc. v. Kohl's Dep't Stores, Inc.*, 975 F. Supp. 562, 564 (S.D.N.Y. 1997); *see also*

*Royall v. City of Beacon*, No. 24-CV-3, 2024 WL 4266546, at *5 (S.D.N.Y. Sept. 23, 2024) (same). A plaintiff may "make this showing through [her] own affidavits and supporting materials, containing an averment of facts that, if credited . . ., would suffice to establish jurisdiction over the defendant." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (alteration, citations, and quotation marks omitted); *see also Mayor v. Sankareh*, No. 21-CV-10831, 2023 WL 2393919, at *2 (S.D.N.Y. Feb. 7, 2023) (same), *report and recommendation adopted*, 2023 WL 2207602 (S.D.N.Y. Feb. 24, 2023).

Although a court must credit a plaintiff's allegations in support of jurisdiction and "construe the pleadings and any supporting materials in the light most favorable to the plaintiff[,]" a court may also consider materials beyond the pleadings in connection with a Rule 12(b)(2) motion. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013) (citing *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)); *see also SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 167 (S.D.N.Y. 2015) ("[A] court may consider documents beyond the pleadings in determining whether personal jurisdiction exists." (quoting *Greatship (India) Ltd. v. Marine Logistics Solutions (Marsol) LLC*, No. 11-CV-420, 2012 WL 204102, at *2 (S.D.N.Y. Jan. 24, 2012))). "Pleadings that assert only 'conclusory non-fact-specific jurisdictional allegations' or state a 'legal conclusion couched as a factual allegation' do not meet [a plaintiff's] burden" of establishing personal jurisdiction over a defendant. *Pruthi v. Empire City Casino*, No. 18-CV-10290, 2022 WL 596370, at *2 (S.D.N.Y. Feb. 28, 2022) (quoting *Jazini*, 148 F.3d at 185); *see also Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) (explaining that a court cannot "draw 'argumentative inferences' in the plaintiff's favor" in considering Rule 12(b)(2) motion (quoting *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992))).

B.  Analysis

    1.  Personal Jurisdiction

    Defendants move to dismiss the Second Amended Complaint pursuant to Rule 12(b)(2), arguing that the Court lacks personal jurisdiction.  (*See* McGinnis Mem. 8–16; OFS Mem. 7–11; DBNA Mem. 7–11.)  Plaintiff disagrees.  (*See generally* Pl's McGinnis Opp.; Pl's OFS Opp.; Pl's DBNA Opp.)

    "There are three requirements for the Court to exercise personal jurisdiction."  *Johnson v. Stop & Shop Supermarket Co., LLC*, No. 22-CV-9691, 2024 WL 1217074, at*6 (S.D.N.Y. Mar. 21, 2024) (citing *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–61 (2d Cir. 2012)).

> First, the plaintiff's service of process upon the defendant must have been procedurally proper.  Second, there must be a statutory basis for personal jurisdiction that renders such service of process effective.  Third, the exercise of personal jurisdiction must comport with constitutional due process principles.

*Id.* (quotation marks and citations omitted).  Here, the sufficiency of Plaintiff's service of process on Defendants is not at issue.  "A federal court sitting in diversity looks to the law of the state in which it sits to ascertain whether it may exercise personal jurisdiction over a foreign defendant." *JihShyr Yih v. Taiwan Semiconductor Mfg. Co.*, No. 18-CV-3844, 2019 WL 2578306, at *4 (S.D.N.Y. June 24, 2019) (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002)), *aff'd sub nom. Yih v. Taiwan Semiconductor Mfg. Co.*, 815 F. App'x 571 (2d Cir. 2020). Accordingly, the Court must analyze whether it has personal jurisdiction over Defendants "under a theory of either general jurisdiction pursuant to N.Y. C.P.L.R. § 301 [("Section 301")] or specific jurisdiction under N.Y. C.P.L.R. § 302 [("Section 302")]."  *Id.*  If a court determines that neither Section 301 nor Section 302 are met, it need not consider whether constitutional due process is satisfied.  *See Johnson*, 2024 WL 1217074, at *6.

a.  General Jurisdiction

Section 301 "allows courts in New York to exercise general personal jurisdiction over individuals who are domiciled in New York, have a physical presence in New York, . . . consent to New York's exercise of jurisdiction, [or,] . . . do[] business in [New York]." *Beskrone v. Berlin*, 656 F. Supp. 3d 496, 508 (S.D.N.Y. 2023) (alterations in original) (quotation marks omitted) (quoting *Delgado-Perez v. City of New York*, No. 17-CV-1194, 2018 WL 6200039, at *2 (S.D.N.Y. Nov. 28, 2018)); *accord Birittieri v. Whole Foods Mkt. Grp., Inc.*, No. 21-CV-8703, 2023 WL 2266481, at *3 (S.D.N.Y. Feb. 28, 2023) ("Pursuant to N.Y. C.P.L.R. § 301, a defendant is subject to personal jurisdiction if she is domiciled in New York, served with process in New York, or continuously and systematically does business in New York.").

"For a New York court to exercise general jurisdiction over a nonresident defendant, that defendant must be 'engaged in such a continuous and systematic course of "doing business" here as to warrant a finding of its "presence" in this jurisdiction.'" *Beskrone*, 656 F. Supp. 3d at 508 (quoting *McGowan v. Smith*, 419 N.E.2d 321, 323 (N.Y. 1981)); *see also TAGC Mgmt., LLC v. Lehman*, 842 F. Supp. 575, 581 (S.D.N.Y. 2012) ("Under [Section] 301, general jurisdiction, which arises out of a defendant's contacts with the forum even if the contacts are unrelated to the action before the court, is established over a foreign corporation or individual engaging in a continuous and systematic course of doing business in New York." (quotation marks omitted)). "Although the 'doing business' test is most often used to find jurisdiction over a corporate defendant, this test can be applied to a nonresident individual." *Rosado v. Bondi*, No. 16-CV-6916, 2017 WL 4947122, at *3 (S.D.N.Y. Oct. 27, 2017) (quoting *Patel v. Patel*, 497 F. Supp. 2d 419, 425 (E.D.N.Y. 2007)).

i.  McGinnis & Schmandt

McGinnis and Schmandt argue that the Court cannot exercise general jurisdiction over them.  (*See* McGinnis Mem. 9–10.)  The Court agrees.

Plaintiff alleges that McGinnis is a limited liability partnership with its principal place of business in Texas.  (SAC ¶ 81.)  Plaintiff also alleges that Schmandt is a partner at McGinnis and lives and works in Texas.  (*Id.* ¶¶ 82, 121.)  Schmandt's unrebutted, sworn declaration supports these portions of the Second Amended Complaint.  (*See* Schmandt Decl. ¶¶ 4, 12.)  The Second Amended Complaint contains no plausible allegations whatsoever regarding McGinnis and Schmandt's degree of contact with New York.  (*See generally* SAC.)  In his declaration, Schmandt states that he "do[es] not perform any legal work in New York" and that McGinnis "may occasionally perform legal work in New York or for clients that reside in New York . . ., but such services have never been more than a very small percentage of McGinnis's business." (Schmandt Decl. ¶¶ 7, 14.)  Further, McGinnis and Schmandt have no New York offices or property, New York-based employees or financial accounts, or New York-issued licenses.  (*See id.* ¶¶ 5, 13.)  This "is a far cry from the 'fair measure of permanence and continuity' required for purposes of N.Y. C.P.L.R. § 301."  *Johnson*, 2024 WL 1217074, at *7 (noting that a one-night stay in a New York hotel does not suffice to establish general jurisdiction).  That Schmandt sent emails to Plaintiff while she was in New York is of no moment.[6]  Sending emails to Plaintiff while she was in New York is the type of allegation that "fail[s] to establish a prima facie case that [McGinnis and Schmandt] [were] 'doing business' in New York."  *Patel*, 497 F. Supp. 2d at

---

[6] Plaintiff doesn't even appear to go this far in the Second Amended Complaint.  Rather, she appears to argue that, because McGinnis and Schmandt "knew or should have known [that she] was an employee and minority owner of a business[, DiFi,] with offices in New York," (SAC ¶ 67(o)), this constituted "doing business" for general jurisdiction purposes.

425 (finding no general jurisdiction where the defendant "sent billing statements to and had telephone conversations with one of the plaintiffs in New York . . . and sent two emails to one of the plaintiffs."); *RBC Capital Markets, LLC v. Garcia Hamilton & Assocs., LP*, No. 19-CV-10247, 2021 WL 230194, at *4 (S.D.N.Y. Jan. 22, 2021) (declining to exercise personal jurisdiction on the basis of the defendant's calls and correspondence with parties in the forum state when the "center of gravity for the transaction" was outside the forum state); *Kogan Law Grp., P.C. v. Brace*, No. 20-CV-1012, 2020 WL 5038764, at *9 (S.D.N.Y. Aug. 26, 2020) (declining to exercise personal jurisdiction over defendants on the basis of their calls and emails to another defendant in New York, holding that it would be unreasonable to conclude that "anytime a defendant calls or emails a New Yorker, she purposefully avails herself of the privilege of doing business in New York."); *Wallert v. Atlan*, 141 F. Supp. 3d 258, 273 (S.D.N.Y. 2015) (finding no general jurisdiction where emails "[a]t most, . . . reflect[ed] that [defendant] had a handful of discussions of business-related matters (instigated by [plaintiff]) with persons based in New York."); *cf. Garcia v. Nationwide Machinery Sales*, No. 08-CV-4167, 2009 WL 2992574, at *3 (E.D.N.Y. Sept. 16, 2009) (finding that "insubstantial sales to New York" and "several email communications" were insufficient to establish general jurisdiction); *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57–58 (2d Cir. 1985) (finding that "extensive" correspondence regarding the parties' business relationship and fifty-four visits to New York to discuss business with the plaintiff was insufficient to establish general jurisdiction); *Taylor v. O'Connor*, No. 18-CV-1476, 2020 WL 13689245, at *3 (E.D.N.Y. Mar. 31, 2020) (finding that a phone call to Plaintiff in New York could not establish "continuous, permanent[,] and substantial activity in New York.").  Accordingly, on this record, the Court concludes that it has no basis to exercise general jurisdiction over McGinnis and Schmandt under Section 301.

14

### ii.  OFS

OFS argues that the Court cannot exercise general jurisdiction over it.  (*See* OFS Mem. 8–9.)  The Court agrees.

Plaintiff alleges that OFS is a Delaware corporation with its principal place of business in Texas.  (SAC ¶ 80.)  Stansbury's unrebutted, sworn declaration states that OFS has no New York office or property or New York-based employees or financial accounts.  (Stansbury Decl. ¶¶ 7–10.)  Plaintiff states that OFS' "website strongly implies that [it is] doing business [in] every U.S. state, including New York."  (SAC ¶ 67(m).)  "Such an assertion contradicts the notion of doing business for purposes of establishing general jurisdiction."  *Sidik v. Royal Sovereign Int'l, Inc.*, No. 17-CV-7020, 2020 WL 5441306, at *3 (E.D.N.Y. Sept. 10, 2020) (citing *Reich v. Lopez*, 38 F. Supp. 3d 436, 457 (S.D.N.Y. 2014) ("That is because a state which properly claims general jurisdiction over an individual is typically singular.")), and *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)); *see also Georgalis v. Facebook, Inc.*, 324 F. Supp. 3d 955, 960–61 (N.D. Ohio 2018) (rejecting plaintiff's argument that general jurisdiction over Facebook was proper because it "transacts business in every state"); *McGinnis v. Nationwide Life & Annuity Ins. Co.*, No. 23-CV-641, 2024 WL 4341925, at *2 (W.D. Okla. Sept. 27, 2024) (rejecting plaintiff's argument that general jurisdiction was proper because, "in online material[,] [defendant] holds itself out as doing business in every state."); *cf. Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 105 (S.D.N.Y. 2015) (noting that a website that "is accessible to anyone with an [I]nternet connection from anywhere in the world" did not establish general jurisdiction because, in part, "[n]othing in the record suggests that . . . website is purposefully directed towards New York").

Plaintiff's allegation that OFS does business in every state does not suffice to plausibly allege that OFS is at home in New York, as "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler*, 571 U.S. at 139 n.20. Accordingly, the Court concludes that it has no basis to exercise general jurisdiction over OFS under Section 301.

### iii.  DBNA

DBNA argues that the Court cannot exercise general jurisdiction over it. (*See* DBNA Mem 7–9.) The Court agrees.

Plaintiff alleges that DBNA is a Delaware corporation with its principal place of business in Texas. (SAC ¶ 79.) Welsh's unrebutted, sworn declaration states that DBNA has no New York office or property or New York-based employees or financial accounts. (Welsh Decl. ¶¶ 10–13.) Plaintiff alleges that DBNA does business in New York because it "was specifically created to manage digital invoicing for all or virtually all commercial transactions in the United States, thereby including New York within its actual and intended field of operations." (SAC ¶ 67(j).) This is functionally identical to Plaintiff's unavailing "doing business in every state" argument, and so the Court finds it unpersuasive for the same reasons stated above. *See* supra Section II.B.1.a.ii. Plaintiff also states that, "[u]pon information and belief, . . . DBNA has . . . repeatedly transacted business . . . in New York and/or participated in New York transactions and/or solicited transactions from New York clients." (SAC ¶ 67(k).) Although allegations based "upon information and belief" are not necessarily facially deficient, "the words, however, are not magic; a plaintiff cannot 'plop "upon information and belief" in front of a conclusory allegation and thereby render it non-conclusory.'" *zuMedia Inc. v. IMDb.com, Inc.*, No. 23-CV-8472, 2024 WL 4566551, at *3 (S.D.N.Y. Oct. 24, 2024) (quoting *J & J Sports Productions, Inc. v. Gonzalez*, No. 18-CV-2319, 2019 WL 3716197, at *5 (E.D.N.Y. May 9, 2019) (quoting

16

*Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018)), *report and recommendation adopted*, 2019 WL 4888635 (E.D.N.Y. Sept. 30, 2019)).  Here, DBNA has stated that it does not do business in New York.  (*See generally* Welsh Decl.)  Plaintiff has failed to rebut DBNA's statements; instead, she states in Opposition that she "know[s] that [DBNA] received about 10% (at the very least) of their revenue from New York."  (Pl's DBNA Opp. 15.)  In support of this statement, Plaintiff cites paragraph 67 of the Second Amended Complaint, but nowhere in the 26 subparts of paragraph 67 does Plaintiff make any allegations related to DBNA's revenue.  (*See* SAC ¶¶ 67(a)–(z).)  Finally, to the extent the SAC can be read to assert general jurisdiction on the basis of Plaintiff receiving communications from DBNA while in New York, the Court has already addressed such a theory and found it lacking.  *See* supra Section II.B.1.a.i.  In short, Plaintiff has made allegations regarding DBNA's business conduct in New York, DBNA has rebutted those allegations, and Plaintiff has failed to respond, so no plausible allegations remain regarding DBNA's degree of contact with New York.  Accordingly, on this record, the Court concludes that it has no basis to exercise general jurisdiction over DBNA under Section 301.

      b.  Specific Jurisdiction

      "N.Y. C.P.L.R. § 302(a) governs specific jurisdiction."  *Mirza v. Docle Vida Med. Spa, LLC*, No. 19-CV-6444, 2024 WL 307969, at*4 (S.D.N.Y. Jan. 26, 2024).  Section 302(a) provides that:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
>> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i) regularly does or solicits business, or engages in any other
persistent course of conduct, or derives substantial revenue from
goods used or consumed or services rendered, in the state, or
(ii) expects or should reasonably expect the act to have
consequences in the state and derives substantial revenue from
interstate or international commerce; or
4. owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. § 302(a).  Section 302 is a "single act statute and proof of one transaction in New

York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so

long as the defendant's activities here were purposeful and there is a substantial relationship

between the transaction and the claim asserted."  *American Girl, LLC v. Zembrka*, 118 F.4th 271,

277 (2d Cir. 2024), *certiorari pending*, No. 24-653 (Dec. 17, 2024) (quoting *Chloe v. Queen Bee

of Beverly Hills*, 616 F.3d 158, 170 (2d Cir. 2010)).  It should be noted, however, that

"jurisdiction cannot be based on conduct that is 'extraneous or coincidental.'"  *World Assoc. of

Icehockey Players Unions N. Am. Division v. Nat'l Hockey League*, No. 24-CV-1066, 2024 WL

4893266, at *11 (S.D.N.Y. Nov. 26, 2024) (quoting *Spetner v. Palestine Inv. Bank*, 70 F.4th 632,

640 (2d Cir. 2023)).

      "To determine the existence of jurisdiction under Section 302(a)(1), a court must decide

(1) whether the defendant transacts any business in New York and, if so, (2) whether this cause

of action arises from such a business transaction."  *Johnson*, 2024 WL 1217074, at *7 (first

alteration omitted, second alteration adopted) (quoting *Best Van Lines, Inc. v. Walker*, 490 F.3d

239, 246 (2d Cir. 2007)).  "Transacting business under [Section] 302(a)(1) means 'purposeful

activity—some activity by which the defendant purposefully avails itself of the privilege of

conducting activities within the forum State, thus invoking the benefits and protections of its

laws.'"  *American Girl*, 118 F.4th at 277 (quoting *Spetner*, 70 F.4th at 639).  "Courts in this

Circuit have . . . found that where a plaintiff's decision to work remotely from New York 'was

not unilateral,' because the defendants were aware the plaintiff was located in New York and

nonetheless continued to employ and communicate with the plaintiff in New York, such defendants have transacted business in the state for the purpose of the long-arm statute." *Diaz-Roa v. Hermes L., P.C.*, No. 24-CV-2105, 2024 WL 4866450, at *6 (S.D.N.Y. Nov. 21, 2024) (collecting cases). Here, however, while Plaintiff alleges that she was in New York for the negotiation and execution of the quasi-contract, and that she performed work under that contract in New York, Plaintiff offers no support for the notion that Defendants "hired [Plaintiff] *knowing* that she would live and work in [New York]." *Williams v. Preeminent Protective Servs., Inc.*, 81 F. Supp. 3d 265, 271 (E.D.N.Y. 2015) (emphasis added); *see also Doe v. McAdam Fin. Grp. LLC*, No. 22-CV-113, 2022 WL 3579700, at *6 (S.D.N.Y. Aug. 3, 2022) (finding no personal jurisdiction where "[t]here is no allegation in the complaint or evidence in the parties' affidavits that [defendant] hired [plaintiff] knowing that she would live and work in New York, and continued its communications with plaintiff here for a sustained period of time, thereby engaging in the kind of independent activities in the state that render long-arm jurisdiction appropriate"), *report and recommendation adopted*, 2022 WL 3578569 (S.D.N.Y. Aug. 19, 2022). Indeed, Plaintiff identifies herself as a resident of Florida. (SAC ¶ 83.) Further, Plaintiff's "location is incidental to her work for [DBNA]," and while she may have worked from New York, she has not alleged that she "perform[ed] any work for [DBNA] that was directed at New York." *Doe*, 2022 WL 3579700, at *6. To the extent Plaintiff argues that Defendants' communications with her while in New York establish specific jurisdiction, courts have held that communications alone are not enough to constitute the transaction of business. *See Seiden v. Baker Tilly Hong Kong Ltd.*, No. 23-CV-1254, 2024 WL 4441582, at *2 (2d Cir. Oct. 8, 2024) (holding that "courts have 'consistently refused to sustain [Section] 302(a)(1) jurisdiction solely on the basis of defendant's communication from another locale with a party in New York." (quoting *Beacon*

*Enters., Inc. v. Menzies*, 715 F.2d 757, 766 (2d Cir. 1983)); *Twin Beauty LLC v. NR Interactive LLC*, No. 24-CV-7412, 2024 WL 5108153, at *5 (E.D.N.Y. Dec. 14, 2024) (holding that "[a]n email to a New York recipient stating defendant's intent to . . . litigat[e] and demanding a settlement to forestall litigation" did not constitute transacting business under Section 302(a)(1)); *Yih v. Taiwan Semiconductor Mfg. Co.*, 815 F. App'x 571, 574 (2d Cir. 2020) (summary order) (holding that "two Skype interviews and emails" were "too limited to amount to a purposeful transaction of business in New York" (citing *Am./Int'l 1994 Venture v. Mau*, 146 A.D.3d 40, 42 (2016)). "Ultimately, 'it is the quality of the defendant's New York contacts that is the primary consideration' when determining whether jurisdiction is appropriate under Section 302(a)(1)." *Precision Wellness LLC v. Demetech Corp.*, No. 21-CV-1244, 2022 WL 970773, at *4 (E.D.N.Y. Mar. 30, 2022) (alteration adopted) (quoting *Licci*, 673 F.3d at 62). Because the Court finds that no single act on the part of each Defendant is sufficient to confer jurisdiction, "nor that the 'totality of [each Defendants'] contacts' establish an 'ongoing course of conduct or relationship in the state," it may not exercise jurisdiction over Defendants under Section 302(a)(1). *Id.*

With respect to Section 302(a)(2), "a defendant's act or omission must have occurred within" New York, *Edwardo v. Roman Catholic Bishop of Providence*, 579 F. Supp. 3d 456, 468 (S.D.N.Y. 2022), and it "may extend[] to out-of-state individuals who did not themselves commit a tort in New York, but 'who can be deemed responsible for such a tort based upon theories of agency or conspiracy," *id.* at 469 (quoting *LaChappelle v. Torres*, 1 F. Supp. 3d 163, 169 (S.D.N.Y. 2014)). Under an agency theory, a plaintiff must make a showing that the tortious conduct was committed by defendant's agent; this showing "hinges on whether the representative acted (i) for the benefit of and (ii) with the knowledge and consent of the

defendant and (iii) the defendant exercised some control over the agent in the matter." *Bonhac World Corp. v. Mellin Works LLC*, No. 21-CV-9239, 2023 WL 346950, at *4 (S.D.N.Y. Jan. 20, 2023) (alterations adopted) (quotation marks omitted) (quoting *LaChapelle*, 1 F. Supp. 3d at 169). Under a conspiracy theory, "a plaintiff must make a prima facie showing of conspiracy and allege specific facts warranting the inference that the defendants were members of the conspiracy." *Meehan v. VIPKid*, No. 20-CV-6370, 2023 WL 7001363, at *15 (E.D.N.Y. Aug. 29, 2023) (italics omitted) (quoting *LaChapelle*, 1 F. Supp. 3d at 169), *report and recommendation adopted*, 2024 WL 277846 (E.D.N.Y. Jan. 25, 2024).

> With respect to Section 302(a)(3),
>
> a plaintiff must sufficiently allege that the defendant committed a tortious act outside of New York and that the defendant's conduct caused injury within New York. In addition, a plaintiff must sufficiently allege either (i) that the defendant regularly does business, or engages in any other persistent conduct, or derives substantial revenue from goods used or services rendered in the state, or (ii) that the defendant expects or reasonably should have expected the act to have consequences in New York, and that the defendant derives substantial revenue from interstate or international commerce.

*Snowbridge Advisors LLC v. ESO Cap. Partners UK LLP*, 589 F. Supp. 3d 401, 413 (S.D.N.Y. 2022). "[C]ourts determining whether there is injury in New York sufficient to warrant [Section] 302(a)(3) jurisdiction must generally apply a situs-of-injury test, which asks them to locate the 'original event which caused the injury.'" *Citadel Sec. Americas LLC v. Portofino Techs. AG*, No. 23-CV-5222, 2024 WL 4635452, at *4 (S.D.N.Y. Oct. 31, 2024) (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 209 (2d. Cir. 2001)). The injured party's residence or domicile in New York "is not a sufficient predicate for jurisdiction under [Section] 302(a)(3)." *IBE Trade Corp. v. Dubinsky*, No. 21-CV-1879, 2022 WL 1487214, at *2 (2d Cir. May 11, 2022) (quotation marks omitted) (quoting *Troma Ent., Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 218 (2d Cir. 2013)). Similarly, "the Second Circuit has made clear that 'the [plaintiff's] suffering of

economic damages in New York is insufficient, alone, to establish a direct injury in New York for [Section] 302(a)(3) purposes." *Giana v. Shein Distribution Corp.*, No. 24-CV-2599, 2024 WL 4362749, at *3 (2d Cir. Oct. 1, 2024) (quoting *Troma Ent., Inc.*, 729 F.3d at 218). Rather, under Section 302(a)(3), "a plaintiff must show that a nondomicilliary 'derives substantial revenue' from either New York or from interstate or international commerce." *Davey v. PK Benelux B.V.*, No. 20-CV-5726, 2022 WL 1289341, at *3 (S.D.N.Y. Apr. 29, 2022). To measure "substantial revenue," courts look to "revenue from a particular source (i.e., New York or interstate and international commerce) and the percentage of a defendant's total revenue that comes from that source." *Id.* (underlining omitted) (citing *Ronar, Inc. v. Wallace*, 649 F. Supp. 310, 316 (S.D.N.Y. 1986)). Under Section 302(a)(3)(ii), a plaintiff must show that a defendant "should have had any expectations of consequences in the State of New York" where defendant has made some "discernible effort to directly or indirectly serve the New York market." *48th Rest. Assocs. LLC v. Avra Hosp. LLC*, No. 19-CV-7708, 2022 WL 203592, at *6 (S.D.N.Y. Jan. 24, 2022). "Courts apply an objective test to determine whether a defendant expects or should have expected an act to have in-state consequences." *Sidik*, 2020 WL 5441306, at *6.

Finally, with respect to Section 302(a)(4), Plaintiff does not allege that any Defendant "owns, uses[,] or possess any real property" in New York, much less that her claims arose out of any such real property. (*See generally* SAC.) Further, Defendants aver that they do not own any real property in New York. (*See* Schmandt Decl. ¶¶ 5, 13; Stansbury Decl. ¶ 9; Welsh Decl. ¶ 12.) For that reason, Section 302(a)(4) does not provide a basis for this court to exercise jurisdiction over Defendants.

Plaintiff contends that the Court may exercise personal jurisdiction on multiple grounds, including because "this dispute arose from and/or relates to a New York contract that

[Defendants] either made or relied upon in their dealings with [Plaintiff]," (SAC ¶ 9); because "[she] performed at least a portion of [the contractual] work in New York, (*id.* ¶ 26); because McGinnis, Schmandt, and OFS conspired with DBNA "to cooperate on this particular dispute," (*id.* ¶ 42); and because McGinnis, Schmandt, and OFS "were DBNA's agents with respect to these issues and/or this dispute," (*id.* ¶ 44).

As discussed above, Sections 302(a)(1) and 302(a)(4) cannot and do not apply to Defendants.  The only avenues remaining for specific jurisdiction are Sections 302(a)(2) or 302(a)(3), which exclusively concern torts that occur within and without New York, respectively.  Contract claims cannot and do not fall under Sections 302(a)(2) and 302(a)(3), and so the Court cannot exercise long-arm jurisdiction over them.  *See Twin Hills Holdings, LLC v. Furling*, No. 21-CV-3507, 2023 WL 2742303, at *6 n.8 (E.D.N.Y. Mar. 31, 2023); *Anscombe Broadcasting Grp., Ltd. v. RJM Commc'ns, Inc.*, No. 03-CV-306A, 2004 WL 2491641, at*6 (W.D.N.Y. Nov. 3, 2004).  Accordingly, Plaintiff's contract claim, unjust enrichment, and quantum meruit claims are dismissed for lack of personal jurisdiction.[7]  As for Plaintiff's "detrimental reliance" claim, it "is an element of a fraud claim, rather than a separate theory for recovery," and so "does not state a claim for which relief can be granted."  *Anscombe*

---

[7] "Breach of contract is not a tort for purposes of" Sections 302(a)(2) and 302(a)(3).  *Tan v. SMS Investment Grp., LLC*, No. 15-CV-3719, 2016 WL 1171605, at *11 (E.D.N.Y. Mar. 24, 2016).  Similarly, claims for unjust enrichment and quantum meruit are quasi-contract claims. *See Koutsoudakis & Iakovou Law Grp. PLLC v. Osman*, No. 22-CV-6351, 2023 WL 5232622, at *7 (S.D.N.Y. Aug. 14, 2023).  Plaintiff's claims pursuant to NYLL, specifically wage claim, final check, and retaliation, sound in contract, and therefore are inapplicable under Sections 302(a)(2) and Section 302(a)(3).  *Cf. Garcia v. Golden Abacus*, No. 16-CV-6252, 2017 WL 2560007, at *2 (S.D.N.Y. June 13, 2017) ("Courts in this circuit have routinely declined to apply tort principles to . . . NYLL claims.").

*Broadcasting Grp.*, 2004 WL 2491641, at *6.  The Court cannot exercise personal jurisdiction over this claim.

Accordingly, the only claims that could fall under Sections 302(a)(2) and 302(a)(3) are fraudulent conveyance, conversion/trover, defamation, and intentional infliction of emotional distress ("IIED").  The Court addresses these in turn.

### i.  Fraudulent Conveyance

Plaintiff asserts a claim for fraudulent conveyance but fails to identify what statutory authority underlies this cause of action.  (*See* SAC ¶¶ 338–54.)  The Court is unaware of any cause of action for fraudulent conveyance under New York common law that is not superseded by the New York Debtor and Creditor Law ("NY DCL").  The Court therefore dismisses this claim.  *See Jian Cheng Liu v. Kueng Chan*, No. 18-CV-5044, 2020 WL 978857, at *11 (E.D.N.Y. Feb. 28, 2020) (dismissing a generic claim for fraudulent conveyance where the NY DCL was neither referenced nor cited).   Accordingly, the Court does not reach whether Sections 302(a)(2) or 302(a)(3) apply to the claim.

### ii.  Conversion/Trover[8]

Plaintiff asserts a claim for conversion.  (SAC ¶¶ 355–71.)  "A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession."  *OL USA LLC v. Maersk A/S*, 730 F. Supp. 3d 66, 71 (S.D.N.Y. 2024) (internal quotation marks omitted) (quoting *Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49–50 (N.Y. 2006)).  "To prevail on a conversion claim, a plaintiff must prove that (1) a defendant has 'acted without

---

[8] "Trover . . . is now the modern tort known as conversion."  *Trott v. Deutsche Bank, AG*, No. 20-CV-10299, 2023 WL 1313040, at *5 (S.D.N.Y. Mar. 26, 2024).

authorization,' (2) the defendant 'exercised dominion or a right of ownership over property belonging to another,' (3) 'the rightful owner made a demand for the property,' and (4) 'the demand for the return was refused.'"  *Id.* (quoting *Red Hook Container Terminal, LLC v. S. Pac. Shipping Co.*, No. 19-CV-287, 2021 WL 5492964, at*2 (2d Cir. Nov. 23, 2021)).

Plaintiff does not allege that McGinnis, Schmandt, or OFS exercised control over DBNA funds in New York, either on their own, or as agents, or in furtherance of a conspiracy.[9] Accordingly, Section 302(a)(2) does not apply.  *See Helio Logistics, Inc. v. Mehta*, No. 22-CV-10047, 2023 WL 21887, at *10 (S.D.N.Y. Jan. 3, 2023) (finding that plaintiff did not establish specific jurisdiction under Section 302(a)(2) where plaintiff "[did] not allege that any [d]efendant used its property . . . in New York"); *cf. Emerland Asset Advisors, LLC v. Schaffer*, 895 F. Supp. 2d 418, 430–31 (E.D.N.Y. 2012) (finding jurisdiction under a Section 302(a)(2) agency theory where plaintiff "alleged that [defendant] took actions" in New York "for the benefit of [another defendant]").

Plaintiff cannot look to Section 302(a)(3).  "For [Section] 302(a)(3) to apply, the alleged tortious act[]—in this case, conversion . . .—must have caused injury within New York."  *Ballon Stoll P.C. v. Cutler*, No. 23-CV-366, 2024 WL 1256049, at *8 (S.D.N.Y. Mar. 25, 2024) (alterations adopted) (quoting *Troma Ent., Inc.*, 729 F.3d at 218).  "[C]ourts apply a 'situs-of-injury test, which asks them to locate the original event which caused the injury.'"  *Id.* (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 791 (2d Cir. 1999)).  "It is well-settled that residence or domicile . . . within New York is not a sufficient predicate for

---

[9] Plaintiff's allegations about agency concern conduct and circumstances *after* the alleged conversion.  (*See, e.g.*, SAC ¶ 74 (arguing that OFS is linked to DBNA because it allegedly claimed or permitted others to claim that McGinnis was its counsel in relation to DBNA business).)

jurisdiction under [S]ection 302(a)(3)."  *Atwal v. iFinex Inc.*, No. 22-CV-149, 2023 WL

3063450, at *10 (W.D.N.Y. Mar. 22, 2023) (alteration adopted) (quotation marks omitted)

(quoting *Troma Ent., Inc.*, 729 F.3d at 218).  Plaintiff alleges that she was entitled to funds paid

to McGinnis and Schmandt for legal services, (SAC ¶ 358), and that those payments resulted in

or contributed to DBNA's alleged insolvency, (*id.* ¶¶ 356, 364–65).[10]  Plaintiff alleges that

jurisdiction is proper because of the alleged diversion of funds that were due to here.  This claim

fails.  "[I]t is settled New York law that the suffering of economic damages in New York is

insufficient, alone, to establish a 'direct' injury in New York for [Section] 302(a)(3) purposes."

*Select Harvest USA LLC v. Indian Overseas Bank*, No. 22-CV-3931, 2023 WL 2664079, at *8

n.6 (S.D.N.Y. Mar. 28, 2023) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 38

(2d Cir. 2010)).  "Personal jurisdiction cannot be established by 'the occurrence of financial

consequences in New York due to the fortuitous location of plaintiffs in New York where the

underlying events took place outside New York.'"  *Ballon Stoll*, 2024 WL 1256049, at *9

(alterations adopted) (quoting *United Bank of Kuwait v. James M. Bridges, Ltd.*, 766 F. Supp.

113, 116 (S.D.N.Y. 1991)); *see also Darby Trading Inc. v. Shell Int'l Trading & Shipping Co.

Ltd.*, 568 F.Supp.2d 329, 337 (S.D.N.Y. 2008) ("[T]he situs of such a nonphysical commercial

injury is the place where the critical events associated with the dispute took place' and not where

the resultant monetary loss occurred." (internal quotations and citations omitted)).  Because

Plaintiff has not alleged specific facts from which the Court can infer injury in New York that is

not purely financial, "any assertion of jurisdiction under Section 302(a)(3) must . . . fail."  *Select

Harvest USA LLC*, 2023 WL 2664079, at *8 n.6.

---

[10] Notably, Plaintiff's allegations do not supply any facts connecting OFS to the alleged conversion.  (*See generally* SAC.)

### iii.  Defamation & IIED

As noted in the text of the statute, Sections 302(a)(2) and 302(a)(3) do not provide a basis for personal jurisdiction on a claim for defamation.  *See Donner v. Der Spiegel*, --- F. Supp. 3d ----, 2024 WL 4035215, at*5 (S.D.N.Y. Sept. 4, 2024) (noting that Sections 302(a)(2) and 302(a)(3) excluded defamation); *cf. Fahey v. Breakthrough Films & Televisions, Inc.*, No. 21-CV-3208, 2022 WL 4547438, at *7 (S.D.N.Y. Sept. 29, 2022) (finding that jurisdiction is foreclosed under Section 302(a)(3) because plaintiff's claim sounded in defamation).  Similarly, where tort claims *sound* in defamation, courts regularly hold Section 302(a)(2) and 302(a)(3) inapplicable.  *See, e.g., Shamoun v. Mushlin*, No. 12-CV-3541, 2014 WL 12776779, at *4 (S.D.N.Y. Mar. 26, 2014) (finding that the court did not have jurisdiction under Section 302(a)(2) where plaintiffs' IIED claim was an attempt to "recast[] their defamation claims as other torts" and collecting cases (citing *Cantor Fitzgerald, L.P. v. Peaslee*, 88 F.3d 152, 157 (2d Cir. 1996)); *cf. Mirza v. Dolce Vida Med. Spa, LLC*, No. 19-CV-6444, 2024 WL 307969, at *12 (S.D.N.Y. Jan. 26, 2024) (finding no jurisdiction under Section 302(a)(3) where plaintiff's tort claims all sounded in defamation).  Here, Plaintiff's defamation and IIED claims both rely on the same alleged defamatory statements made by Schmandt in his January 30, 2024, email in which he reminds Plaintiff of her obligations to DBNA as a former officer.  (*See* SAC ¶¶ 379, 400.)  Accordingly, the Court does not have jurisdiction under Sections 302(a)(2) or 302(a)(3) on Plaintiff's defamation and IIED claims.

### c.  Waiver and Consent

Plaintiff argues that Defendants consented to personal jurisdiction, (*see* SAC ¶¶ 56, 67), and, alternatively, that Defendants waived personal jurisdiction because "they did nothing to choose a different jurisdiction or otherwise constrain [Plaintiff's] choice" in choosing where to

initiate this Action, (SAC ¶ 77 (emphasis omitted)).  All Defendants argue that they neither consented to nor waived personal jurisdiction.  (*See* McGinnis Mem. 14–15; OFS Mem. 10; DBNA Mem. 11.)

"[P]ersonal jurisdiction 'is a waivable right, and there are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction over the court." *Pellegrino v. Procter & Gamble Co.*, No. 23-CV-10631, 2025 WL 240762, at *4 (S.D.N.Y. Jan. 17, 2025) (alteration adopted) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985)).  While a defendant can "impliedly consent to personal jurisdiction through litigation-related conduct," *Fuld*, 82 F.4th at 89, Defendants have not done so here. Defendants do contest personal jurisdiction, have not failed to follow procedural rules, and have not "accept[ed] . . . some in-forum benefit condition on amenability to suit in the forum's courts." *See id.* at 93, 96 n.13.  Plaintiff argues that "this Court has personal jurisdiction over these Defendants because the key events at issue in this case transpired in New York according to these Defendants' admissions by and through counsel." (SAC ¶ 56 (emphasis omitted); *see also id.* ¶ 67(q) (arguing that Defendants "should be estopped from denying this Court's personal jursidction" because McGinnis and Schmandt allegedly represented or claimed to represent all four Defendants until April 10, 2024).)  This reads as an argument that Defendants' removal of this Action to this Court waives personal jurisdiction.  However, "[r]emoval does not waive any Rule 12(b) defenses," including lack of personal jurisdiction.  *Murillo-Roman v. Pension Boards - United Church of Christ*, 22-CV-8365, 2024 WL 246018, at *6 (S.D.N.Y. Jan. 23, 2024) (quoting *Cantor Fitzgerald*, 88 F.3d at 157 n.4); *Dynamic Star, LLC v. Zackson*, No. 24-CV-4649, 2024 WL 3677092, at *1 n.12 (S.D.N.Y. Aug. 6, 2024) (same).  Accordingly, the Court finds that Defendants have neither waived nor consented to personal jurisdiction.

2.  Jurisdictional Discovery

As noted above, Plaintiff has made multiple requests for jurisdictional discovery.  She renews this request in the Second Amended Complaint.  (*See* SAC ¶ 78.)  Defendants oppose this request on the ground it would be futile.  (*See* McGinnis Mem. 15–16; OFS Reply 6–7; DBNA Reply 10.)

"Whether to allow jurisdictional discovery is 'a decision as to which a district court enjoys substantial discretion.'"  *Bayshore Cap. Advisors*, 667 F. Supp. 3d at 150–51 (quoting *Keren Chasanim Corp. v. Vill. of Kiryas Joel*, No. 07-CV-262, 2008 WL 11518871, at *5 (S.D.N.Y. Nov. 10, 2008)); *see also Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 446 (2d Cir. 2019) ("[T]he district court has considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction." (quoting *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 449 (D.C. Cir. 1990))).  "[A] court . . . does not abuse its discretion in denying jurisdictional discovery 'if the party seeking discovery cannot articulate a reasonable basis for the court first to assume jurisdiction.'"  *Beierwaltes v. L'Office Federale De La Culture De La Confederation Suisse*, 999 F.3d 808, 828 (2d Cir. 2021) (quoting *Arch Trading Corp. v. Republic of Ecuador*, 839 F.3d 193, 206–07 (2d Cir. 2016)).  "While the bar for granting jurisdictional discovery is low, and it is appropriately granted where a plaintiff's allegations make a sufficient start toward establishing personal jurisdiction, if the plaintiff has failed to establish a prima facie case for personal jurisdiction, jurisdictional discovery is generally not granted."  *Reed Int'l, Inc. v. Afghanistan Int'l Bank*, 657 F.Supp.3d 287, 298 (S.D.N.Y. Feb. 21, 2023) (citations and quotation marks omitted).

Plaintiff has not made a sufficient start toward establishing personal jurisdiction, primarily because she admits that no Defendant is a resident of New York or has sufficient

contact with New York to permit personal jurisdiction, both in the abstract and in relation to her

claims. Rather, Plaintiff has only lobbed conclusory assertions and has not provided "non-

conclusory fact-specific allegations or evidence showing that activity that constitutes the basis of

jurisdiction has taken place." *Lopez v. Cookies SF, LLC*, No. 21-CV-5002, 2022 WL 4385407,

at *2 (S.D.N.Y. Sept. 22, 2022) (citation omitted). Accordingly, the Court denies Plaintiff's

request for jurisdictional discovery.[11]

### III.  Conclusion

For the reasons set forth above, Defendants Motions are granted. Plaintiff's Second

Amended Complaint is dismissed. If Plaintiff wishes to file a third amended complaint alleging

additional facts and otherwise addressing the deficiencies identified above, Plaintiff must do so

within 30 days of the date of this Opinion & Order. Plaintiff is advised that the third amended

complaint will completely replace, not supplement, the Second Amended Complaint. The third

amended complaint must therefore contain all of the claims, defendants, and factual allegations

that Plaintiff wishes the Court to consider. If Plaintiff fails to timely file a third amended

complaint, Plaintiff's claims may be dismissed with prejudice.

The Court notes that many of Plaintiff's various claims are based on the same factual

allegations. Plaintiff is cautioned that a third amended complaint must explain how similar

claims differ, otherwise the Court may dismiss duplicative claims. *See Bytemark, Inc. v. Xerox

Corp.*, 342 F. Supp. 3d 496, 512 (S.D.N.Y. 2018) (dismissing plaintiff's unjust enrichment claim

---

[11] The Court notes that, even if it were to find personal jurisdiction over Defendants was permitted under statute, there remain serious questions about whether such an exercise of personal jurisdiction would pass constitutional muster.

as duplicative of its contract and tort claims and collecting cases).  The Clerk of the Court is

respectfully directed to terminate the pending Motions at Dkt. Nos. 37, 38, 43, 46, 50, and 52.

SO ORDERED.

Dated:    March 10, 2025
          White Plains, New York

_____
    KENNETH M. KARAS
    United States District Judge