UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHELE PAIGE,

                    *Plaintiff,*

      v.

DIGITAL BUSINESS NETWORKS
ALLIANCE, INC., OFS PORTAL, LLC,
MCGINNIS LOCHRIDGE, LLP, *and*
PHILLIP SCHMANDT,

                    *Defendants.*

No. 24-CV-3169 (KMK)

ORDER & OPINION

---

Appearances:

Michele Paige
Orlando, FL
*Pro se Plaintiff*

Geoffrey William Heineman, Esq.
Ryanne Allene Hankla, Esq.
Jung Hyun Park, Esq.
Ropers Majeski PC
New York, NY
*Counsel for Defendant Digital Business Networks Alliance, LLC*

Evan Scott Weintraub, Esq.
Wachtel & Missry, LLP
New York, NY
*Counsel for Defendant OFS Portal LLC*

Howard Ian Elman, Esq.
Mioko Catherine Tajika, Esq.
Elman Freiberg PLLC
New York, NY
*Counsel for Defendants McGinnis Lochridge LLP and Phillip Schmandt*

Scott Evan Silberfein, Esq.
Sultzer & Lipari, PLLC
Poughkeepsie, NY
*Counsel for Defendants McGinnis Lochridge LLP and Phillip Schmandt*

KENNETH M. KARAS, United States District Judge:

Michele Paige ("Plaintiff"), proceeding pro se, brings this Action against Digital Business Networks Alliance, Inc. ("DBNA"), OFS Portal, LLC ("OFS"), McGinnis Lochridge, LLP ("McGinnis"), and Phillip Schmandt ("Schmandt") (collectively "Defendants"), asserting multiple claims arising out of an alleged employment relationship and contract between Plaintiff and DBNA.  (*See generally* Third Am. Compl. ("TAC") (Dkt. No. 106).)  Specifically, Plaintiff asserts the following causes of action: (1) wage claim against DBNA and OFS, pursuant to New York Labor Law ("NYLL") §§ 193, 194; (2) final check against DBNA and OFS, pursuant to NYLL §§ 193, 194; (3) breach of contract against DBNA and OFS; (4) intentional infliction of emotional distress ("IIED") against all Defendants; (5) retaliation against DBNA and OFS, pursuant to NYLL § 215; and (6) New York "whistleblower law" against DBNA and OFS, pursuant to NYLL § 740.  (*See id.* ¶¶ 192–367.)  Before the Court are DBNA, OFS, McGinnis, and Schmandt's respective Motions to Dismiss.  For the reasons set forth below, Defendants' Motions are granted.

## I.  Background

### A.  Materials Considered

Plaintiff has attached 58 exhibits to her Third Amended Complaint, (*see* TAC at 76–295),[1] which she references throughout, (*see generally id.*).  "'When considering a motion to dismiss, the Court's review is confined to the pleadings themselves,' because 'to go beyond the allegations in the Complaint would convert the Rule 12(b)(6) motion into one for summary

---

[1] Plaintiff's Third Amended Complaint includes paragraph and page numbers, but the exhibits attached to it do not contain page numbers.  (*See generally* TAC.)  Thus, when referencing these exhibits, the Court cites to PDF page numbers.

judgment pursuant to Rule 56.'" *Watson v. New York*, No. 22-CV-9613, 2023 WL 6200979, at *1 (S.D.N.Y. Sept. 22, 2023) (alterations adopted) (quoting *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002)).  "Nevertheless, the Court's consideration of documents attached to, or incorporated by reference in the Complaint, and matters of which judicial notice may be taken, would not convert the motion to dismiss into one for summary judgment." *Id.*; *see also Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (explaining that "when ruling on Rule 12(b)(6) motions to dismiss," courts may "consider the complaint in its entirety . . . , documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" (internal quotation marks and citation omitted)); *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) ("In deciding a Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings[,] and matters of which judicial notice may be taken.'" (quoting *Samuels v. Air Transp. Loc. 504*, 992 F.2d 12, 15 (2d Cir. 1993))).

Additionally, when reviewing a complaint submitted by a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks and citation omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics and citation omitted), statements by the plaintiff "submitted in response to [a defendant's] request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), "documents either in [the plaintiff's] possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282

3

F.3d 147, 153 (2d Cir. 2002) (quotation marks and citation omitted), and "[the plaintiff's] opposition memorandum," *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997) (citation omitted).

Because Plaintiff is proceeding pro se, the Court will consider the documents referenced in the Third Amended Complaint. *See Barkai v. Mendez*, 629 F. Supp. 3d 166, 175 (S.D.N.Y. 2022) (considering exhibits attached to a pro se complaint when deciding motion to dismiss); *see also Floyd v. Rosen*, No. 21-CV-1668, 2022 WL 1451405, at *3 (S.D.N.Y. May 9, 2022) (considering exhibits attached to a pro se opposition memorandum).

B.  Factual Background

The following facts are taken from Plaintiff's Third Amended Complaint and attached exhibits and are assumed to be true for the purpose of ruling on the instant Motions. *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

Plaintiff is a "citizen[] [of] Florida," (TAC ¶ 81), and has spent "more than fifteen years in finance[,]" the last four of which she has "manag[ed] DiFi, a fintech that provides back-office support and accounting for 20% of all U.S. equity trades and billions of illiquid assets[,]" (*id.* ¶ 11.)

DBNA is a "not-for-profit organization whose mission is to establish and operate an electronic delivery exchange network available for use by all commercial enterprises in the United States, which supports the digital delivery of electronic business documents . . . ." (Pl.'s Ex. 2 at 79.)  DBNA's bylaws provide that directors "may not receive compensation for their services as [d]irectors," and that DBNA may pay "compensation in a reasonable amount to its officers. . . for services rendered, but only as approved by the Board of Directors."  (Pl.'s Ex. 48

§§ 4.21, 6.3 at 256–58.)  DBNA's officers are elected by its Board of Directors "and shall consist of a President and Secretary," though the Board may elect or appoint other officers as it deems necessary.  (*Id.* § 6.1 at 258.)  Additionally, during the relevant time period, "DiFi was a member of DBNA."  (TAC ¶ 51.)

Plaintiff began working on "the Federal Reserve's prolonged efforts to create an e-invoice exchange" at an unspecified time.  (*Id.* ¶ 120.)  On April 19, 2023, Plaintiff wrote to Jim Taylor ("Taylor"), the then- interim President of DBNA, "to lament [her] inability to obtain a Board seat."  (*Id.* ¶ 120; *see also* Pl.'s Ex. 43 at 224 (providing a copy of Plaintiff's email to Taylor).)  In response, Taylor assured Plaintiff that he had "forwarded [her] name for a position." (Pl.'s Ex. 43 at 224).  On April 20, 2023, Plaintiff applied to become DBNA's President and Treasurer.  (TAC ¶ 122; *see also* Pl.'s Ex. 44 at 228 (providing a copy of Plaintiff's application email).)  Then, on April 21, 2023, Plaintiff "applied to become either DBNA's Treasurer or its Secretary."  (*Id.* ¶ 123 (emphases omitted); *see also* Pl.'s Ex. 12 at 119 (providing a copy of Plaintiff's email).)  Although Plaintiff is a "citizen[] [of] Florida," (TAC ¶ 81), she avers that she was located in New York during all of these communications, (*see id.* ¶¶ 120–24).

On April 23, 2023, Plaintiff received notice that DBNA's Board of Directors had "voted [her] into both of the interim roles of Treasurer and Secretary."  (Pl.'s Ex. 12 at 119; *see also* Pl.'s Ex. 14 at 126 (indicating DBNA's Board of Directors unanimously elected Plaintiff to serve as interim Secretary and Treasurer "until the first election of the Board by the Members").) According to Plaintiff, she "accepted DBNA's offer by phone" and began working on assignments for DBNA by "no later than April 25, 2023," while located in New York.  (TAC ¶ 126–27.)

During her tenure as interim Secretary and Treasurer, Plaintiff allegedly "created DBNA's financial plan, managed its finances, collected its initial membership fees, and participated in all of its planning and development efforts[.]" (*Id.* ¶ 11.) By her own count, Plaintiff devoted at least 500 hours to this work, (*id.* ¶¶ 8, 134, 203), and she was never paid for it, (*id.* ¶ 135). Plaintiff alleges that, in her conversations with Taylor and Chris Welsh ("Welsh"), the then-current Chair of DBNA's Board, she "stated—and believed that they had agreed—that [she] would be paid [her] market wages whenever DBNA had the budget to do so."[2] (*Id.* ¶ 143.) Plaintiff alleges that she sent Defendants "a budget that included payments to [her]." (*Id.* ¶ 144; *see also id.* ¶ 19 (alleging Plaintiff emailed Taylor "a budget that included compensation for [her] before DBNA even began." (emphasis omitted).)

On May 3, 2023, Plaintiff exchanged emails with Taylor and Welsh in which Taylor requested Plaintiff sign DBNA's bylaws and return them to him, Welsh, and Schmandt. (*See* Pl.'s Exs. 46–47 at 232–37.)

Although Plaintiff was DBNA's interim Secretary, Schmandt would occasionally act as Secretary during DBNA board meetings. (*See* Pl.'s Ex. 14 at 125 (indicating that Schmandt acted as Secretary during the April 23, 2023, board meeting); Pl.'s Ex. 31 at 191 (indicating that Schmandt acted as Secretary during the May 16, 2023, board meeting, at which Plaintiff was also present).) Around May 16, 2023, DBNA retained McGinnis as counsel. (*See* Pl.'s Ex. 31 at 191 ("Mr. Welsh reported that he and Mr. Taylor had signed the engagement letter with McGinnis Lochridge . . . ."). Schmandt was paid $570 an hour for work related to DBNA. (TAC ¶ 28.)

---

[2] Welsh was, until March 1, 2024, CEO of OFS. (TAC ¶ 4(a); Pl.'s Ex. 16 at 130.)

On January 11, 2024, Mimi Stansbury ("Stansbury"), an OFS employee, emailed Plaintiff requesting information regarding DBNA's bank account and asked Plaintiff to facilitate Stansbury's receiving access to the account.[3]  (*See* Pl.'s Ex. 40 at 215.)  In the email, Stansbury identified herself as DBNA's Treasurer.  (*See id.*)  By resolution dated January 16, 2024, the DBNA Board voted to remove "all prior officers," that is, Taylor and Plaintiff, and appointed Welsh as President and Chief Operating Officer ("COO") and Stansbury as Treasurer and Secretary.  (*See* Pl.'s Ex. 34 at 200–01.)  At the time, Stansbury was an employee of OFS and later succeeded Welsh and OFS's CEO.  (TAC ¶ 5; Pl.'s Ex. 16 at 130.)  On January 17, 2024, Plaintiff emailed Welsh, noting that she "[did not] think that th[e] takeover/handoff was handled appropriately or legally," that she "certainly didn't intend to volunteer so many hours without any compensation," that "everyone understood that we would be compensated fairly and reasonably as soon as [DBNA] launched its operations," and that she was "particularly troubled that [DBNA] saw fit to pay its general counsel, but not [her], the treasurer and secretary."  (Pl.'s Ex. 33 at 197.)  On January 23, 2024, Welsh responded by providing Plaintiff with a copy of the Board resolution replacing her as Secretary and Treasurer and said he would "speak with the Board about [her] email."  (*Id.*)  That same day, Stansbury emailed Plaintiff to follow up on her request for DBNA's bank account information.  (*See* Pl.'s Ex. 40 at 215.)

On January 30, 2024, Schmandt emailed Plaintiff and copied Taylor and Welsh, warned Plaintiff that, "as a former officer of DBNA and a signatory on the DBNA Bank Account, [Plaintiff] [had] a continuing duty to protect the assets of DBNA and under no circumstances may [she] use those assets for personal benefits" and that any "attempt[] to withdraw funds . . .

---

[3] Stansbury succeeded Welsh as CEO of OFS in March 2024.  (*See* Pl.'s Ex. 16 at 130.)

or us[e] [her] status as signatory on the account as a means to leverage [her] personal position or extract concessions from DBNA" and that doing so "would be wrongful and would expose [her] to potential liability to DBNA."  (Pl.'s Ex. 11 at 117.)

C.  Procedural Background

On March 21, 2024, Plaintiff initiated this Action in Westchester County Supreme Court. (*See* Summons With Notice (Dkt. No. 12-1).)  On April 25, 2024, Defendants removed the Action to this Court.  (*See* Notice of Removal (Dkt. No. 12).)  Plaintiff subsequently filed multiple pleadings, (*see* Am. Compl. (Dkt. No. 15); First Am. Compl. (Dkt. No. 30)), before filing a Second Amended Complaint ("SAC") on May 21, 2024, (*see* SAC (Dkt. No. 33)).  On May 24, 2024, the Court set a briefing schedule on Defendants' Motions to Dismiss.  (*See* Order (Dkt. No. 35).)  Plaintiff filed multiple motions for jurisdictional discovery, (*see* Letter from Michele Paige to Court (May 19, 2024) (Dkt. No. 28); Letter from Michele Paige to Court (May 21, 2024) (Dkt. No. 32); Third Mot. for Jurisdictional Disc. (Dkt. No. 37); Mot. for Jurisdictional Disc. (Dkt. No. 38)), and the Court noted that it would address Plaintiff's requests in its ruling on Defendants' Motions to Dismiss, (*see* Order (Dkt. No. 41)).

On June 24, 2024, Defendants filed their Motions to Dismiss.  (*See* McGinnis Notice of Mot. (Dkt. No. 46); Decl. of Phillip Schmandt in Supp. of Mot. (Dkt. No. 48); McGinnis' Mem. in Supp. of Mot. (Dkt. No. 49); DBNA Notice of Mot. (Dkt. No. 50); DBNA's Mem in Supp. of Mot. (Dkt. No. 58); Decl. of Chris Welsh in Supp. of Mot. (Dkt. No. 57); OFS Notice of Mot. (Dkt. No. 52); OFS' Mem. in Supp. of Mot. (Dkt. No. 55); Decl. of Ryanne A. Hankla in Supp. of Mot. (Dkt. No. 56); Decl of. Mimi Stansbury in Supp. of Mot. (Dkt. No. 54).)  Three days later, Plaintiff sua sponte filed a Motion for Summary Judgment, (*see* Notice of Dispositive Mots. (Dkt. No. 61); Decl. of Michele Paige in Supp. of Mots. (Dkt. No. 62); Statement of

8

Undisputed Material Facts (Dkt. No. 63), Mem. of Law in Supp. of Mots. (Dkt. No. 64)), and another complaint, (*see* Am. Compl. (Dkt. No. 65)).  On July 3, 2024, the Court construed Plaintiff's recent slate of filings as requesting leave to file a motion to amend and held the request in abeyance pending its ruling on Defendants' Motions to Dismiss.  (*See* Order (Dkt. No. 66).)  Between July 5 and July 11, 2024, Plaintiff filed her Opposition.  (*See* Mem. in Opp'n to DBNA's Mot. (Dkt. No. 71); Mem. in Opp'n to OFS' Mot. (Dkt. No. 73); Mem. in Opp'n to McGinnis' Mot. (Dkt. No. 75).)  On August 7, 2024, Defendants replied.  (*See* McGinnis' Reply in Supp. of Mot. (Dkt. No. 82); OFS' Reply in Supp. of Mot. (Dkt. No. 84); DBNA's Reply in Supp. of Mot. (Dkt. No. 85).)

Between August 2024 and March 2025, Plaintiff filed several requests to conduct third party discovery, (*see* Letter from Michele Paige to Court (Aug. 22, 2024) (Dkt. No. 86); Letter from Michele Paige to Court (Sept. 14, 2024) (Dkt. No. 90); Letter from Michele Paige to Court (Oct. 22, 2024) (Dkt. No. 93); Letter from Michele Paige to Court (Feb. 23, 2025) (Dkt. No. 98)), all of which the Court denied as untimely, (*see* Order (Dkt. No. 87); Order (Dkt. No. 99)).

On March 10, 2025, the Court dismissed Plaintiff's Second Amended Complaint for lack of jurisdiction and granted Plaintiff leave to file a third amended complaint within 30 days of the Court's decision.  *See Paige v. Digit. Bus. Networks All., Inc.*, No. 24-CV-3169, 2025 WL 753952, at *13 (S.D.N.Y. Mar. 10, 2025).

On March 17, 2025, Plaintiff filed her Third Amended Complaint along with a Motion to Transfer and Motion for Recusal.  (*See* Mot. to Recuse & Mot. to Reconsider (Dkt. No. 104); Mot. to Transfer (Dkt. No. 105); TAC.)  Plaintiff filed an additional Motion for Recusal on April 7, 2025, (*see* Letter from Michele Paige to Court (Apr. 2, 2025) (Dkt. No. 110)), which the Court denied on April 8, 2025, (*see* Order (Dkt. No. 111)).  On April 16, 2025, Defendants requested

leave to file Motions to Dismiss Plaintiff's Third Amended Complaint. (*See* Letter from Ryanne Hankla, Esq. to Court (Apr. 16, 2025) (Dkt. No. 116); Letter from Howard Elman, Esq. to Court (Apr. 16, 2025) (Dkt. No. 117); Letter from Evan Weintraub, Esq. to Court (Apr. 16, 2025) (Dkt. No. 118).) On June 25, 2025, Defendants filed their Motions to Dismiss. (*See* DBNA Notice of Mot. (Dkt. No. 134); Decl. of Ryanne Hankla in Supp. of Mot. ("Hankla Decl.") (Dkt. No. 135); Decl. of Chris Welsh in Supp. of Mot. ("Welsh Decl.") (Dkt. No. 136); DBNA Mem. of Law in Supp. of Mot. ("DBNA Mem.") (Dkt. No. 137); McGinnis & Schmandt Notice of Mot. (Dkt. No. 138); Decl. of Howard I. Elman in Supp. ("Elman Decl.") (Dkt. No. 139); Decl. of Phillip Schmandt in Supp. ("Schmandt Decl.") (Dkt. No. 140); McGinnis Mem. of Law in Supp. ("McGinnis Mem.") (Dkt. No. 141); OFS Notice of Mot. (Dkt. No. 142); Decl. of Evan S. Weintraub in Supp. ("Weintraub Decl.") (Dkt. No. 143); Decl. of Mimi Stansbury in Supp. ("Stansbury Decl.") (Dkt. No. 144); OFS Mem. of Law in Supp. ("OFS Mem.") (Dkt. No. 145).[4]

On July 6, 2025, Plaintiff filed her Opposition. (*See* Pl.'s Mem. of Law in Opp'n to Def. DBNA's Mot. to Dismiss ("Pl.'s DBNA Opp.") (Dkt. No. 153); Pl.'s Mem. of Law in Opp'n to Def. McGinnis and Schmandt's Mot. to Dismiss ("Pl.'s McGinnis Opp.") (Dkt. No. 154); Pl.'s Mem. of Law in Opp'n to Def. OFS' Mot. to Dismiss ("Pl.'s OFS Opp.") (Dkt. No. 155); Decl. of Michele Paige in Opp'n (Dkt. No. 156).)

---

[4] "The Court omits from this procedural history a flurry of other motions filed by Plaintiff . . . that are not relevant to the instant Motions. The Court will not address them here other than to advise Plaintiff that the repeated filing of 'frivolous claims and motions whose only possible explanation could be harassment and delay of proceedings' may result in sanctions." *Fecteau v. City of Mount Vernon*, No. 23-CV-9173, 2025 WL 873018, at *5 (S.D.N.Y. Mar. 20, 2025) (quoting *Azzarmi v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 20-CV-9155, 2025 WL 35003, at *9 (S.D.N.Y. Jan. 6, 2025)).

On August 15, 2025, OFS filed its Reply to Plaintiff's Opposition.  (*See* Reply Mem. of Law in Supp. of OFS' Mot. ("OFS Reply") (Dkt. No. 157).)  DBNA, McGinnis, and Schmandt filed their Replies on August 18, 2025.  (*See* Reply Mem. of Law in Supp. of McGinnis & Schmandt's Mot. ("McGinnis Reply") (Dkt. No. 158); Reply Mem. of Law in Supp. of DBNA's Mot. ("DBNA Reply") (Dkt. No. 159).)

## II.  Discussion

### A.  Standard of Review

#### 1.  Rule 12(b)(2)

Defendants move to dismiss Plaintiff's claims under, inter alia, Federal Rule of Civil Procedure 12(b)(2).  (*See* DBNA Mem. 7–15; McGinnis Mem. 7–15; OFS Mem. 6–11.)

On a Rule 12(b)(2) motion, the plaintiff has the burden of establishing that the court has jurisdiction over the defendant.  *See In re Magnetic Audiotape Antitrust Litig.,* 334 F.3d 204, 206 (2d Cir. 2003) (per curiam); *see also Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*, 667 F. Supp. 3d 83, 116 (S.D.N.Y. 2023) (same).  However, "prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith legally sufficient allegations of jurisdiction, i.e., by making a prima facie showing of jurisdiction." *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998) (alteration adopted) (italics, citation, and quotation marks omitted); *see also Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008) ("Where . . . a district court relies on the pleadings and affidavits, and chooses not to conduct a full-blown evidentiary hearing, plaintiffs need only make a prima facie showing of personal jurisdiction over the defendant." (citation and quotation marks omitted)).  "[A] prima facie showing of jurisdiction does not mean that [the] plaintiff must show only some evidence that [the] defendant is subject to jurisdiction; it means that [the] plaintiff

11

must plead facts which, if true, are sufficient in themselves to establish jurisdiction."
*Bellepointe, Inc. v. Kohl's Dep't Stores, Inc.*, 975 F. Supp. 562, 564 (S.D.N.Y. 1997); *see also Royall v. City of Beacon*, No. 24-CV-3, 2024 WL 4266546, at *5 (S.D.N.Y. Sept. 23, 2024) (same). A plaintiff may "make this showing through [her] own affidavits and supporting materials, containing an averment of facts that, if credited . . . , would suffice to establish jurisdiction over the defendant." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (alteration, citations, and quotation marks omitted); *see also Mayor v. Sankareh*, No. 21-CV-10831, 2023 WL 2393919, at *2 (S.D.N.Y. Feb. 7, 2023) (same), *report and recommendation adopted*, 2023 WL 2207602 (S.D.N.Y. Feb. 24, 2023).

Although a court must credit a plaintiff's allegations in support of jurisdiction and "construe the pleadings and any supporting materials in the light most favorable to the plaintiff[,]" a court may also consider materials beyond the pleadings in connection with a Rule 12(b)(2) motion. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013) (citing *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)); *see also SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 167 (S.D.N.Y. 2015) ("[A] court may consider documents beyond the pleadings in determining whether personal jurisdiction exists." (quoting *Greatship Ltd. v. Marine Logistics Sols. (Marsol) LLC*, No. 11-CV-420, 2012 WL 204102, at *2 (S.D.N.Y. Jan. 24, 2012))). "Pleadings that assert only 'conclusory non-fact-specific jurisdictional allegations' or state a 'legal conclusion couched as a factual allegation' do not meet [a plaintiff's] burden" of establishing personal jurisdiction over a defendant. *Pruthi v. Empire City Casino*, No. 18-CV-10290, 2022 WL 596370, at *2 (S.D.N.Y. Feb. 28, 2022) (quoting *Jazini*, 148 F.3d at 185); *see also Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) (explaining that a court cannot "draw 'argumentative inferences' in the

12

plaintiff's favor" when considering a Rule 12(b)(2) motion (quoting *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992))).

>    2.  Rule 12(b)(6)

Defendants also move to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6).  (*See* DBNA Mem. 15–25; McGinnis Mem. 15–17; OFS Mem. 11–21.)

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, quotation marks, and alterations omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation marks and alteration omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the

13

pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R.

Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the

hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery

for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual

allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per

curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency

of a complaint we accept as true all factual allegations . . . ." (quotation marks omitted)).

Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all

reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d

302, 304 n.1 (S.D.N.Y. 2014) (citation omitted). Where, as here, a plaintiff proceeds pro se, the

"complaint[] must be construed liberally and interpreted to raise the strongest arguments that [it]

suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation

marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a

pro se party from compliance with relevant rules of procedural and substantive law." *Bell v.

Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v.

Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to

inform themselves regarding procedural rules and to comply with them." (italics and quotation

marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its

consideration to facts stated on the face of the complaint, in documents appended to the

complaint or incorporated in the complaint by reference, and to matters of which judicial notice

may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999)

14

(quotation marks and citation omitted).  When a plaintiff proceeds pro se, however, the Court

may consider "materials outside the complaint to the extent that they are consistent with the

allegations in the complaint[,]" *Alsaifullah*, 2013 WL 3972514, at *4 n.3 (quotation marks

omitted), including, "documents that a pro se litigant attaches to his opposition papers," *Agu*,

2010 WL 5186839, at *4 n.6 (italics omitted), statements by the plaintiff "submitted in response

to [a] defendant's request for a pre-motion conference," *Jones*, 2013 WL 5300721, at *2, and

"documents either in [the] plaintiff[']s possession or of which [the] plaintiff[] had knowledge

and relied on in bringing suit," *Chambers*, 282 F.3d at 153 (quotation marks omitted).

B.  Analysis

"Before addressing the merits of the Parties' Motions, the Court must first tackle the

jurisdictional challenges Defendants raise."  *24 Franklin Ave R.E. Corp. v. Heaship*, No. 09-CV-

3223, 2017 WL 1194702, at *7 (S.D.N.Y. Mar. 30, 2017) (citation omitted).

1.  Personal Jurisdiction

Defendants move to dismiss Plaintiff's Third Amended Complaint pursuant to Rule

12(b)(2), arguing the Court lacks personal jurisdiction.  (*See* DBNA Mem. 7–15; McGinnis

Mem. 7–15; OFS Mem. 6–11.)  Plaintiff disagrees.  (*See generally* Pl.'s DBNA Opp.; Pl.'s

McGinnis Opp.; Pl.'s OFS Opp.)

"There are three requirements for the Court to exercise personal jurisdiction."  *Johnson v.

Stop & Shop Supermkt. Co., LLC*, No. 22-CV-9691, 2024 WL 1217074, at *6 (S.D.N.Y. Mar.

21, 2024) (citation omitted).

> First, "the plaintiff's service of process upon the defendant must have been
> procedurally proper."  Second, "there must be a statutory basis for personal
> jurisdiction that renders such service of process effective."  Third, "the exercise of
> personal jurisdiction must comport with constitutional due process principles."
> The sufficiency of Plaintiff's service of process on [Defendants] is not at issue
> here . . . .

15

*Id.* (quoting *Licci*, 673 F.3d at 59–60 (internal citations omitted)).  "A federal court sitting in diversity looks to the law of the state in which it sits to ascertain whether it may exercise personal jurisdiction over a foreign defendant."  *JihShyr Yih v. Taiwan Semiconductor Mfg. Co.*, No. 18-CV-3844, 2019 WL 2578306, at \*4 (S.D.N.Y. June 24, 2019) (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002)), *aff'd sub nom. Yih v. Taiwan Semiconductor Mfg. Co.*, 815 F. App'x 571 (2d Cir. 2020) (summary order). Accordingly, the Court must analyze whether it has personal jurisdiction over Defendants "under a theory of either general jurisdiction pursuant to N.Y. C.P.L.R. § 301 [("Section 301")] or specific jurisdiction under N.Y. C.P.L.R. § 302 [("Section 302")]."  *Id.*  If the Court determines that neither Section 301 nor Section 302 is met, it need not consider whether constitutional due process is satisfied.  *Johnson*, 2024 WL 1217074, at \*8.

a.  General Jurisdiction

Section 301 "allows courts in New York to exercise general personal jurisdiction over individuals who are domiciled in New York, have a physical presence in New York, . . . consent to New York's exercise of jurisdiction, [or,] . . . do[] business in [New York]."  *Beskrone v. Berlin*, 656 F. Supp. 3d 496, 508 (S.D.N.Y. 2023) (alterations in original) (quotation marks omitted) (quoting *Delgado-Perez v. City of New York*, No. 17-CV-1194, 2018 WL 6200039, at \*2 (S.D.N.Y. Nov. 28, 2018)); *see also Birittieri v. Whole Foods Mkt. Grp., Inc.*, No. 21-CV-8703, 2023 WL 2266481, at \*3 (S.D.N.Y. Feb. 28, 2023) ("Pursuant to N.Y. C.P.L.R. § 301, a defendant is subject to personal jurisdiction if she is domiciled in New York, served with process in New York, or continuously and systematically does business in New York.").

"For a New York court to exercise general jurisdiction over a nonresident defendant, that defendant must be 'engaged in such a continuous and systematic course of "doing business" here

16

as to warrant a finding of its "presence" in this jurisdiction.'" *Beskrone*, 656 F. Supp. 3d at 508 (quoting *McGowan v. Smith*, 419 N.E.2d 321, 323 (N.Y. 1981)); *see also TAGC Mgmt., LLC v. Lehman*, 842 F. Supp. 2d 575, 581 (S.D.N.Y. 2012) ("Under [Section] 301, general jurisdiction, which arises out of a defendant's contacts with the forum even if the contacts are unrelated to the action before the court, is established over a foreign corporation or individual engaging in a continuous and systematic course of doing business in New York." (quotation marks omitted)). "Although the 'doing business' test is most often used to find jurisdiction over a corporate defendant, this test can be applied to a nonresident individual." *Rosado v. Bondi*, No. 16-CV-6916, 2017 WL 4947122, at *3 (S.D.N.Y. Oct. 27, 2017) (quoting *Patel v. Patel*, 497 F. Supp. 2d 419, 425 (E.D.N.Y. 2007)).

### i.  DBNA

In dismissing Plaintiff's Second Amended Complaint, the Court found that it lacked general jurisdiction over DBNA.  *See Paige*, 2025 WL 753952, at *7.  DBNA argues the Court still lacks general jurisdiction over it based on the allegations in Plaintiff's Third Amended Complaint.  (*See* DBNA Mem. 8–10.)  The Court agrees.

DBNA is a Delaware corporation with its principal place of business in Texas.  (*See* Pl.'s Ex. 48 § 1.2 at 239 (indicating DBNA was incorporated in Delaware); *id.* § 2.1 at 241 (providing the address of DBNA's principal office in Houston, Texas).)  Since DBNA is not domiciled in New York, the Court must evaluate whether its contacts are so "continuous and systematic" that DBNA is "essentially at home" in New York.  *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014) (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  However, the Second Circuit has cautioned that "in [its] view[,] *Daimler* established that, except in a truly []exceptional[] case, a corporate defendant may be treated as 'essentially at home' only where it

17

is incorporated or maintains its principal place of business[.]" *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) (collecting cases); *see also Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 498 (2d Cir. 2020) (same).

Plaintiff argues that DBNA is subject to New York's general jurisdiction because it "earns 9% of its revenue in New York."[5] (TAC ¶ 101). However, Plaintiff does not provide a basis for this claim or place it in the context of DBNA's activities outside of New York, making it impossible for the Court to do what the "*Daimler* court instructed . . . in assessing the extent of a corporation's contacts in a state for general jurisdiction purposes" and "assess [DBNA]'s local activity not in isolation, *but in the context of [its] overall activity*[.]" *Brown*, 814 F.3d at 629 (emphasis in original); *see also Daimler*, 571 U.S. at 140 n.20 (noting that the general jurisdiction inquiry "does not focus solely on the magnitude of the defendant's in-state contacts," but "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide." (alterations and internal quotation marks omitted)).

Welsh's unrebutted, sworn declaration establishes that DBNA is not "at home" in New York. In it, Welsh states that DBNA is not and has not ever registered as a foreign corporation in New York, has no New York office or New York-based employees or financial accounts, and does not do business or engage in marketing activities in New York. (Welsh Decl. ¶¶ 9–14.) Plaintiff does not dispute any of the claims in Welsh's Declaration.

---

[5] In support of her argument for general jurisdiction, Plaintiff cites *Davey v. PK Benelux B.V.*, No. 20-CV-5726, 2022 WL 1289341 (S.D.N.Y. Apr. 29, 2022) for the proposition that New York has general jurisdiction over a defendant corporation that earns 5% of its revenue in New York. However, Plaintiff both misstates the holding of *Davey* and cites it in an inapplicable context. *Davey* is a specific personal jurisdiction case, *id.* at *2–5, and the *Davey* court found that the defendant's earning of 0.00092% of its revenue in New York was insufficient for it to have jurisdiction over the defendant under Section § 302, *id.* at *4.

Thus, the only assertion Plaintiff can hope to rely on is the 9% revenue claim, but with no information to contextualize this claim, the Court concludes that DBNA is not subject to New York's general jurisdiction. *See Don King Prods., Inc. v. World Boxing Ass'n.*, No. 21-CV-4885, 2022 WL 2133751, at *2 (S.D.N.Y. June 14, 2022) ("Defendant cannot be subject to general jurisdiction in New York because it is incorporated in the state of Washington and has its principal place of business in Panama. It is therefore not 'at home' in the jurisdiction, and cannot, as a matter of New York statutory law or the federal Constitution, be subject to general jurisdiction [in New York]." (citations omitted)); *Brown v. Web.com Grp., Inc.* 57 F. Supp. 3d 345, 354 (S.D.N.Y. 2014) (finding the court lacked general jurisdiction over defendant because defendant's "sole ties to New York . . . are in-state customers, emails directed at those customers, attendance at local presentations and conferences, and five in-state employees" but the defendant was "neither incorporated nor headquartered here" and "ha[d] no property, bank accounts, or assets in New York and [was] not authorized to conduct business here"); *Alaska Reefer Mgmt. LLC v. Network Shipping Ltd.*, No. 14-CV-3580, 2014 WL 2722978, at *3 (S.D.N.Y. June 16, 2014) (finding unsubstantiated allegations that the defendant generated "substantial revenue" in the forum state "alone d[id] not suffice to confer general personal jurisdiction over [the] [d]efendant"); *Garcia v. Nationwide Mach. Sales*, No. 08-CV-4167, 2009 WL 2992574, at *3 (E.D.N.Y. Sept. 16, 2009) (finding that "insubstantial sales to New York" and "several email communications" were insufficient to establish general jurisdiction over the defendant); *Hutton v. Priddy's Auction Galleries, Inc.*, 275 F. Supp. 2d 428, 437 (S.D.N.Y. 2003) (finding "a small amount of revenue derived from New York customers is insufficient to support a finding that [a] foreign [defendant] is doing business in New York" when the defendant "own[ed] no real property within New York and ha[d] no offices, bank accounts,

19

telephone lines, employees, mailing address, or post office boxes in the state."); *Manning v. Budget Rent A Car*, 241 N.Y.S.3d 295, 298 (App. Div. 2025) ("[T]he general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts, but instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide.") (quotation marks omitted).

ii. McGinnis and Schmandt

In dismissing Plaintiff's Second Amended Complaint, the Court found that it lacked general jurisdiction over McGinnis and Schmandt. *See Paige*, 2025 WL 753952, at *6. McGinnis and Schmandt argue that the Court still lacks general jurisdiction over them, notwithstanding the allegations in Plaintiff's Third Amended Complaint. (*See* McGinnis Mem. 8–9.) The Court agrees.

Plaintiff pleads no facts about McGinnis' domicile, (*see generally* TAC), but in its Motion, McGinnis asserts that it "is a limited liability partnership formed under Texas law, with its principal office in Texas." (McGinnis Mem. 6; Schmandt Decl. ¶ 3.) Schmandt is a partner at McGinnis and lives and works in Texas. (*See* Pl.'s Ex. 29 at 180–85; *cf.*, TAC ¶ 26(d) (describing Schmandt as a "Texas real estate attorney[]").) In Schmandt's unrebutted, sworn declaration, he states that he "d[oes] not perform any legal work in New York" and McGinnis "may have occasionally performed legal work in New York . . . but such services have never been more than a very small percentage of [the firm]'s business." (*Id.* ¶¶ 9, 11.) Further, McGinnis and Schmandt have no New York offices or property, New York-based employees or financial accounts, or New York-issued licenses or registrations. (*Id.* ¶¶ 6–9.) Based on this record, the Court concludes that it lacks general jurisdiction over McGinnis and Schmandt because they have no tangible contacts with New York. *See Johnson*, 2024 WL 1217074, at *7

20

(finding no general jurisdiction over defendant when his only contact with the forum was a one-night hotel stay); *Tarsavage v. Citi Tr. Co., Ltd.*, 3 F. Supp. 3d 137, 144 (S.D.N.Y. 2014) (finding the defendant was not subject to the court's general jurisdiction where "the complaint does not allege that [the defendant] has any presence or systematic contacts with the [forum]."); *Chiriqui Land Co. v. M/V Snow Flower*, No. 90-CV-2729, 1991 WL 156345, at *3 (S.D.N.Y. Aug. 6, 1991) (finding the court lack general personal jurisdiction over defendant where "[defendant] has no contacts with this forum.").

### iii.  OFS

In dismissing Plaintiff's Second Amended Complaint, the Court found that it lacked general jurisdiction over OFS.  *See Paige*, 2025 WL 753952, at *7.  OFS argues the Court still lacks general jurisdiction over it, (*see* OFS Mem. 6–8), and the Court agrees.

Plaintiff makes no representations about OFS' domicile, but OFS asserts, and Plaintiff does not dispute, "that OFS is incorporated in Delaware and has its principal place of business in Texas."  (*Id.* at 8; *see also* Pl.'s Ex. 16 at 132 (stating that OFS is "[h]eadquartered in Houston, [Texas]").  Further, Stansbury's unrebutted, sworn declaration asserts that OFS has no bank accounts in New York, does not have an office or employees in New York, owns no property in New York, and is not registered to do business in New York.  (Stansbury Decl. ¶¶ 6–10.)  Based on this record, the Court concludes that it lacks general jurisdiction over OFS because OFS has no ties to New York.  *See Johnson*, 2024 WL 1217074, at *7 (finding no general jurisdiction over defendant when his only contact with the forum was a one-night hotel stay); *Tarsavage*, 3 F. Supp. 3d at 144 (finding the defendant was not subject to the court's general jurisdiction where "the complaint does not allege that [the defendant] has any presence or systematic contacts with

the [forum]."); *Chiriqui Land Co.*, 1991 WL 156345, at *3 (finding the court lack general

personal jurisdiction over defendant where "[defendant] has no contacts with this forum").

### b. Specific Jurisdiction

"N.Y. C.P.L.R. § 302(a) governs specific jurisdiction." *Mirza v. Docle Vida Med. Spa,*

*LLC*, No. 19-CV-6444, 2024 WL 307969, at*4 (S.D.N.Y. Jan. 26, 2024). Section 302(a)

provides that:

> As to a cause of action arising from any of the acts enumerated in this section, a
> court may exercise personal jurisdiction over any non-domiciliary, or his executor
> or administrator, who in person or through an agent:
> > 1. transacts any business within the state or contracts anywhere to supply
> > goods or services in the state; or
> > 2. commits a tortious act within the state, except as to a cause of action for
> > defamation of character arising from the act; or
> > 3. commits a tortious act without the state causing injury to person or
> > property within the state, except as to a cause of action for defamation of
> > character arising from the act, if he
> > > (i) regularly does or solicits business, or engages in any other
> > > persistent course of conduct, or derives substantial revenue from
> > > goods used or consumed or services rendered, in the state, or
> > > (ii) expects or should reasonably expect the act to have
> > > consequences in the state and derives substantial revenue from
> > > interstate or international commerce; or
> > 4. owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. § 302(a).[6] Section 302 is a "single act statute and proof of one transaction in New

York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so

long as the defendant's activities here were purposeful and there is a substantial relationship

between the transaction and the claim asserted." *Am. Girl, LLC v. Zembrka*, 118 F.4th 271, 276

(2d Cir. 2024) (quoting *Chloe v. Queen Bee of Beverly Hills*, 616 F.3d 158, 170 (2d Cir. 2010)).

It should be noted, however, that "jurisdiction cannot be based on conduct that is 'extraneous or

---

[6] Section 302(a)(4) is plainly inapplicable because Plaintiff does not assert that
Defendants owned, used, or possessed any real property within New York, (*see generally* TAC),
so the Court forgoes discussion of it.

coincidental.'" *World Ass'n of Icehockey Players Unions N. Am. Div. v. Nat'l Hockey League*, No. 24-CV-1066, 2024 WL 4893266, at *11 (S.D.N.Y. Nov. 26, 2024) (quoting *Spetner v. Palestine Inv. Bank*, 70 F.4th 632, 640 (2d Cir. 2023)).

In her Third Amended Complaint, Plaintiff raises several bases for this Court's specific jurisdiction over DBNA. (*See* TAC ¶¶ 103–18.) The Court interprets them as follows: transacting business in New York, (*id.* ¶¶ 105–13), contract, (*id.* ¶¶ 104, 118), and consent, (*id.* ¶ 103). She goes on to argue the Court has specific jurisdiction over OFS, McGinnis, and Schmandt as agents of DBNA. (*See id.* ¶¶ 114–16.) Additionally, because Plaintiff asserts a claim for intentional infliction of emotional distress, (*id.* ¶¶ 287–27), the Court will evaluate whether it has jurisdiction over Defendants pursuant to Sections 302(a)(2) and 302(a)(3). Although the analysis for these jurisdictional bases is overlapping, for the sake of clarity, the Court will evaluate each argument separately.

i. Transacting Business

"To determine the existence of jurisdiction under Section 302(a)(1), a court must decide (1) whether the defendant transacts any business in New York and, if so, (2) whether this cause of action arises from such a business transaction." *Johnson*, 2024 WL 1217074, at *7 (first alteration omitted, second alteration adopted) (quoting *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007)); *see also Johnson v. Ward*, 829 N.E.2d 1201, 1201 (N.Y. 2005) ("[L]ong-arm jurisdiction over a nondomiciliary exists when (i) a defendant transacted business within the state and (ii) the cause of action arose from that transaction of business. If either prong of the statute is not met, jurisdiction cannot be conferred under [Section] 302(a)(1)."). "Transacting business under [Section] 302(a)(1) means 'purposeful activity—some activity by which the defendant purposefully avails itself of the privilege of conducting activities within the

23

forum [s]tate, thus invoking the benefits and protections of its laws.'"  *Am. Girl*, 118 F.4th at 277

(quoting *Spetner*, 70 F.4th at 639).  "Courts in this Circuit have . . . found that where a plaintiff's

decision to work remotely from New York 'was not unilateral,' because the defendants were

aware the plaintiff was located in New York and nonetheless continued to employ and

communicate with the plaintiff in New York, such defendants have transacted business in the

state for the purpose of the long-arm statute."  *Diaz-Roa v. Hermes L., P.C.*, No. 24-CV-2105,

2024 WL 4866450, at *6 (S.D.N.Y. Nov. 21, 2024) (collecting cases).  However, a defendant is

not automatically subject to New York's long arm jurisdiction when a plaintiff alleges sufficient

contacts with the forum state for the purposes of Section 302(a)(1) because the Court's exercise

of jurisdiction over the defendant must also comport with the constitutional minimum contacts

doctrine.  *See In re China Constr. Bank Corp.*, 803 F. Supp. 3d 260, 284 (S.D.N.Y. 2025)

(citation omitted) ("For purposes of clarity and efficiency, the Court discusses the Section

302(a)(1) and due process contacts requirements simultaneously."); *see also Donini Int'l S.p.A.

v. Satec (U.S.A.) LLC*, No. 03-CV-9471, 2004 WL 1574645, at *5 (S.D.N.Y. July 13, 2004)

(noting the analysis of the "transacts business" prong of Section 302(a)(1) is "in essence, the

same as that established by the United States Supreme Court to evaluate the constitutionality of

personal jurisdiction under long-arm statutes").

     At the outset, the Court notes that it does not have Section 302(a)(1) jurisdiction over

OFS, McGinnis, or Schmandt because Plaintiff does not assert that OFS, McGinnis, or Schmandt

took any action that amounts to "transacting business" in New York, instead focusing on

DBNA's contacts with New York.  (*See generally* TAC.)  Although Plaintiff alleges the OFS,

McGinnis, and Schmandt are liable as agents of DBNA, for a corporation's in-state contacts to

amount to jurisdiction over a corporate agent or officer, a plaintiff must "convince the court that"

24

the corporation "engaged in purposeful activities in th[e] [forum] [s]tate . . . for the benefit of and with the knowledge and consent of" the corporation's officers or agents and that those corporate officers or agents "exercised some control over [the corporation] in the matter." *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 44 (N.Y. 1988); *see also Diaz-Roa*, 757 F. Supp. 3d at 524 (same). Plaintiff makes no such allegations. Instead, Plaintiff alleges that "OFS was DBNA's agent" because "OFS terminated [her,]" (TAC ¶ 114), but it was DBNA's Board, not OFS, who voted to remove Plaintiff from her interim Treasury and Secretary positions, (Pl.'s Ex. 34 at 200–01). Similarly, Plaintiff's conclusory assertion that "McGinnis and Schmandt were DBNA's agent" because "[l]iterally, that's what attorneys are[,]" (TAC ¶ 115), does not show that DBNA maintained any relationship with Plaintiff in New York with the "knowledge, consent, and control" of McGinnis or Schmandt, *Diaz-Roa*, 757 F. Supp. 3d at 524.

The Court now turns to whether it has long arm jurisdiction over DBNA. "An 'amended complaint ordinarily super[s]edes the original[] and renders it of no legal effect.'" *Vasquez v. Yadali*, No. 16-CV-895, 2020 WL 1082786, at *3 (S.D.N.Y. Mar. 5, 2020) (quoting *Dluhos v. Floating & Abandoned Vessel, Known as N.Y.*, 162 F.3d 63, 68 (2d Cir. 1998)). "However, where allegations in an amended pleading 'directly contradict' pleadings in the original complaint, courts have disregarded the amended pleading.'" *Brooks v. 1st Precinct Police Dep't*, No. 11-CV-6070, 2014 WL 1875037, at *2 (E.D.N.Y. May 9, 2014). "Even for pro se plaintiffs, '[i]n cases where allegations in an amended pleading directly contradict pleadings in the original complaint, courts have disregarded the amended pleading.'" *Dos Santos v. Assurant*, 625 F. Supp. 3d 121, 131 (S.D.N.Y. 2022) (quoting *Wheeler v. Slanovec*, No. 16-CV-9065, 2019 WL 2994193, at *6 (S.D.N.Y. July 9, 2019) (citation and quotation marks omitted)); *see also Palm Beach Strategic Income, LP v. Salzman, P.C.*, No. 10-CV-261, 2011 WL 1655575, at *5

25

(E.D.N.Y. May 2, 2011) (noting that district courts have "considered prior inconsistent pleadings . . . as 'controvertible, not conclusive' admissions," but "a district court has no obligation to accept as true an amended complaint's allegations, if they directly contradict[] the facts set forth in [the] original complaint" (brackets in original) (quotation marks omitted)), *aff'd*, 457 F. App'x 40 (2d Cir. 2012) (summary order); *Colliton v. Cravath, Swaine & Moore LLP*, No. 08-CV-400, 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008) ("Where a plaintiff blatantly changes his statement of the facts in order to respond to the defendant's motion to dismiss and directly contradicts the facts set forth in his original complaint, a court is authorized to accept the facts described in the original complaint as true." (quotation marks omitted)), *aff'd*, 356 F. App'x 535 (2d Cir. 2009) (summary order); *Wallace v. N.Y.C. Dep't of Corr.*, No. 95-CV-4404, 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996) (accepting as true facts alleged in original complaint where the plaintiff alleged directly contradictory facts in his amended complaint).

DBNA urges the Court to disregard certain allegations in Plaintiff's Third Amended Complaint that directly contradict her Second Amended Complaint.  (DBNA Mem. 11–12.) Specifically, they note that in her Second Amended Complaint, Plaintiff alleged that she "'explicitly offered to perform in New York' and that DBNA 'never specified—or even suggested in any way where [she] should perform [her] work[,]'" (*id.* at 11 (quoting SAC ¶¶ 61, 67(b), 67(c))), and "alleged that DBNA was 'utterly indifferent as to where [she] performed [her] work' and did not 'care (or even ascertain),' 'specify,' 'provide instructions,' or 'even know [her] place of work[,]'" (*id.* at 12 (quoting SAC ¶¶ 67(a), 67(e))).  However, in her Third Amended Complaint, Plaintiff "now alleges that '[she and DBNA] expressly discussed that [she] was in New York and [DBNA] specifically requested that [she] start working in New York, which [she] did at their request.'"  (*Id.* (quoting TAC ¶ 54)); *see also* TAC ¶¶ 106–07 (alleging

26

that Taylor, "who was [Plaintiff's] supervisor" and "negotiated the contract on behalf of DBNA[,]" "discussed that [Plaintiff] was in New York, that [she] would routinely perform [her] work in New York, and that [she] would need to begin working in New York" and claiming that Plaintiff had similar conversations with DBNA's Board).)  She also claims DBNA "knew or should have known [she] worked in New York for Difi[,]" (*id.* ¶ 108), and "knew or should have known [she] was working from DiFi's New York offices when they hired [her] and when [she] began working[,]" (*id.* ¶ 52), that DBNA directed her to solicit business from New York residents and "routinely directed [her] to perform in New York[,]" (*id.* ¶¶ 110–13), that DBNA "intended and discussed benefitting from New York because New York is the center of finance, [and] they wanted to dominate the financial industry, and they wanted [her] to collect membership fees from other firms in New York[,]" (*id.* ¶ 55), and that her actions on behalf of DBNA resulted in "9% of DBNA's revenue" coming from New York, (*id.* ¶¶ 112–13).  Further, in her Opposition brief, Plaintiff argues that the identified discrepancies are not contradictions at all.  (*See* Pl.'s DBNA Opp. 31–32.)  However, the Court is not persuaded.

It is well settled that a district court may ignore newly asserted facts where "a plaintiff blatantly changes h[er] statement of the facts in order to respond to the defendant's motion to dismiss and directly contradicts the facts set forth in h[er] original complaint." *Vasquez v. Reilly*, No. 15-CV-9528, 2017 WL 946306, at *3 (S.D.N.Y. Mar. 9, 2017); *see also Azzarmi*, 2025 WL 35003, at *4 (same); *Colliton*, 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008) (same).  Here, Plaintiff's assertions that DBNA instructed her to solicit business in New York directly contradict her Second Amended Complaint, which the Court previously found to not plead facts sufficient for it to exercise specific jurisdiction over any of the Defendants under Section 302(a)(1).  *See Paige*, 2025 WL 753952, at *8.  Under these circumstances, the Court finds that

27

it cannot accept Plaintiff's new, contradictory allegations as true (or even plausible), as they appear designed to avoid the very reasons the Court granted the Motion to Dismiss her Second Amended Complaint and are not the kind of allegations that would evolve with the discovery of new information.  Thus, the Court accepts the representations in Plaintiff's Second Amended Complaint as true and concludes that it still does not have personal jurisdiction over DBNA under Section 302(a)(1).

### ii.  Intentional Infliction of Emotional Distress

Because Plaintiff asserts a claim for intentional infliction of emotional distress ("IIED"), (TAC ¶¶ 287–27), which is a tort, the Court will consider whether it has personal jurisdiction over Defendants pursuant to Sections 302(a)(2) or 302(a)(3).  As noted in the text of the statute, Sections 302(a)(2) and 302(a)(3) do not provide a basis for personal jurisdiction on a claim for defamation.  *See Donner v. Der Spiegel*, 747 F. Supp. 3d 681, 689 (S.D.N.Y. 2024) (noting that Sections 302(a)(2) and 302(a)(3) exclude jurisdiction for defamation-based actions); *Tannerite Sports, LLC v. NBCUniversal Media LLC*, 135 F. Supp. 3d 219, 231 (S.D.N.Y. 2015), ("[A] plaintiff may not escape the special rules applicable to defamation through artful pleading: when a claim, however denominated, sounds in defamation, the CPLR's defamation rules apply." (citation omitted)) *aff'd sub nom. Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864, F.3d 236 (2d Cir. 2017); *cf. Fahey v. Breakthrough Films & Television, Inc.*, No. 21-CV-3208, 2022 WL 4547438, at *7 (S.D.N.Y. Sept. 29, 2022) (finding that jurisdiction is foreclosed under Section 302(a)(3) because plaintiff's claim sounded in defamation).  Similarly, where tort claims *sound* in defamation, courts regularly hold Section 302(a)(2) and 302(a)(3) inapplicable.  *See, e.g.*, *Shamoun v. Mushlin*, No. 12-CV-3541, 2014 WL 12776779, at *4 (S.D.N.Y. Mar. 26, 2014) (finding that the court did not have jurisdiction under Section 302(a)(2) where plaintiffs' IIED

claim was an attempt to "recast[] their defamation claims as other torts" and collecting cases); *cf.* *Mirza*, 2024 WL 307969, at *12 (finding no jurisdiction under Section 302(a)(3) where plaintiff's tort claims sounded in defamation).

Here, Plaintiff's IIED claim plainly sounds in defamation. She claims Defendants "accused [her] of criminal misconduct regarding the management of their funds[,]" which "is defamation per se" and "particularly damaging where, as here, [Plaintiff] [is] a professional involved in money management." (TAC ¶¶ 294–96 (emphasis omitted).) These alleged accusations were made by Schmandt in a January 30, 2024, email to Plaintiff, in which he reminds her of her obligations to DBNA as a former officer. (*See* Pl.'s Ex. 11 at 117 (providing a copy of the email).) Notably, these are the same facts on which Plaintiff previously asserted defamation and IIED claims, which the Court found to be an insufficient basis for exercising personal jurisdiction over Defendants. *See Paige*, 2025 WL 753952, at *12 (finding the Court lacks jurisdiction under Sections 302(a)(2) and 302(a)(3) because "Plaintiff's defamation and IIED claims both rely on the same alleged defamatory statements made by Schmandt in his January 30, 2024, email in which he reminds Plaintiff of her obligations to DBNA as a former officer"). Accordingly, the Court still does not have jurisdiction over Defendants pursuant to Sections 302(a)(2) and 302(a)(3). *See Lively v. Wayfarer Studios LLC*, 810 F. Supp. 3d 421, 434–37 (S.D.N.Y. 2025) (finding the court lacked jurisdiction over the defendants pursuant to the plaintiff's IIED claim because it sounded in defamation and collecting cases).

29

iii.  Contract

Plaintiff also asserts that she and DBNA "had a contract, which [she] can enforce in New York" pursuant to Section 302(a)(1).[7]  (TAC ¶ 104.)  Initially, the Court must note that if such a contract exists, Plaintiff's own allegations undermine her claim that OFS, McGinnis, and Schmandt were parties to it.  Plaintiff alleges that OFS, McGinnis, and Schmandt "were acting as agents" of DBNA, (*id.* ¶ 101; *see also id.* ¶¶ 114–15), but "[c]ontract doctrine teaches that an agent is not personally bound to a contract when the agent acts on behalf of a disclosed principal unless there is clear and explicit evidence of the agent's intention to be so bound[,]" *In re Aluminum Warehousing Antitrust Litig.*, No. 14-CV-3116, 2015 WL 6472656, at *17 (S.D.N.Y. Oct. 23, 2015) (citations omitted); *see also Best Brands Consumer Prods., Inc. v. Versace 19.69 Abbigliamento Sportivo S.R.L.*, No. 17-CV-4593, 2020 WL 8678085, at *7 (S.D.N.Y. Oct. 1, 2020) ("[U]nder New York law, '[a]n agent dealing on behalf of a disclosed principal is not liable for her principal's breach of contract absent evidence that the agent intended to be bound personally on the contract.'" (alterations omitted) (quoting *Broadway Warehouse Co. v. Buffalo Barn Bd., LLC*, 39 N.Y.S.3d 555, 559 (App. Div. 2016))); *Sea-Land Serv., Inc. v. Amstar Corp.*, 690 F. Supp. 246, 250 (S.D.N.Y. 1988) ("An agent is not liable for the contractual obligations of a disclosed principal." (citation omitted)); *Cruz v. NYNEX Info. Rscs.*, 703 N.Y.S.2d 103, 108 (App. Div. 2000) (affirming dismissal of claims against a particular defendant "since it is unquestioned that [the defendant] was merely the agent of a disclosed principal and, thus, had no personal liability under the contract" (citation omitted)), *abrogated on other grounds,*

---

[7] Plaintiff actually claims that the Court has "contractual jurisdiction" over Defendants pursuant to "CPLR § 301(a)(1)[,]" (TAC ¶ 104), but Section 301 has no sub-parts, so the Court interprets this assertion as Plaintiff arguing this Court has jurisdiction under Section 302(a)(1).

*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*, 171 N.E.3d 1192 (N.Y. 2021). Plaintiff's claim that OFS "inherited DBNA's debt to [her]" when it "assumed responsibility for DBNA's operations[,]" (TAC ¶ 28(f)), is similarly unworkable because, "[a]s a general matter, a successor is not responsible for the liabilities of its predecessor[,]" *Qanouni v. D&H Ladies Apparel LLC*, No. 18-CV-2763, 2021 WL 9036182, at *12 (S.D.N.Y. Mar. 23, 2021) (collecting cases); *see also In re Roman Cath. Diocese*, 652 B.R. 16, 27 (Bankr. S.D.N.Y. 2023) ("The general rule in New York is that a successor is not responsible for the liabilities of its predecessor." (collecting cases)); *Chen v. DG & S NY, Inc.*, 406 F. Supp. 3d 216, 222 (E.D.N.Y. 2016) (same) (collecting cases). Accordingly, any contract Plaintiff entered into with DBNA could only confer personal jurisdiction over DBNA and not the other Defendants.

Because this jurisdictional basis depends upon the existence of a contract between Plaintiff and DBNA, the Court must first determine whether Plaintiff has pled sufficient facts to support the existence of a contract. *See, e.g., Mercator Corp. v. Windhorst*, 159 F. Supp. 3d 463, 471–72 (S.D.N.Y. 2016) (determining whether the plaintiff had pled the existence of a contract before turning to whether the alleged contract provided personal jurisdiction over the defendant); *Lana Mora, Inc. v. S.S. Woermann Ulanga*, 672 F. Supp. 125, 127–28 (S.D.N.Y. 1987) ("Where there is no contractual relationship, there can be no personal jurisdiction under [Section] 302(a)(1) based upon a defendant having contracted . . . in New York."). Here, the existence of the alleged contract is heavily contested. (*Contrast* TAC ¶¶ 104, 118–32, 249–86 *with* DBNA Mem. 20–22; McGinnis Mem. 14–15; OFS Mem. 10.)

"The question of whether a binding agreement exists is generally a legal question for the courts to decide." *Hudson Techs., Inc. v. RGAS, LLC*, 716 F. Supp. 3d 327, 333 (S.D.N.Y. 2024)

31

(quotation marks omitted) (quoting *Alessi Equip., Inc. v. Am. Piledriving Equip., Inc.*, 578 F. Supp. 3d 467, 486–87 (S.D.N.Y. 2022)).  For a contract to form, there must be a "'meeting of the minds' and 'a manifestation of mutual assent.'"  *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288–89 (2d Cir. 2019) (quoting *Express Indus. & Terminal Corp. v. N.Y. Dep't of Transp.*, 715 N.E.2d 1050, 1053 (N.Y. 1999)).  That manifestation of mutual assent "must be sufficiently definite to assure that the parties are truly in agreement with respect to all material terms."  *Id.* at 289.  "Generally, courts look to the basic elements of the offer and the acceptance to determine whether there was an objective meeting of the minds sufficient to give rise to a binding and enforceable contract."  *Id.*  While New York law recognizes both express and implied contracts, otherwise referred to as implied in fact contracts, "[a] contract 'cannot be implied in fact where the facts are inconsistent with its existence[] or against the declaration of the party to be charged . . . . The assent of the person to be charged is necessary, and, unless he has conducted himself in such a manner that his assent may fairly be inferred, he has not contracted.'"  *Betty, Inc. v. PepsiCo, Inc.*, 283 F. Supp. 3d 154, 166–67 (S.D.N.Y. 2017) (quoting *Miller v. Schloss*, 113 N.E. 337, 339 (N.Y. 1916)); *see also Barker v. Bancorp, Inc.*, No. 21-CV-869, 2023 WL 5835036, at *5 (S.D.N.Y. Sept. 8, 2023) (collecting cases).

Here, Plaintiff asserts that her conversations and emails with Taylor and Welsh amount to a contract between her and DBNA.  (*See* TAC ¶¶ 118–32, 143–44, 153).  In support of the existence of a contract, Plaintiff offers a handful of emails and a draft budget that allegedly includes a line item for her compensation in support of the existence of a contract, (*see* Pl.'s Exs. 12–14 at 120–26; Pl.'s Exs. 21–22 at 153–61; Pl.'s Exs. 45–46 at 229–34), but she does not claim that these writings constitute a written contract, (*see generally id.*).  In the absence of a

32

written contract, courts will assess whether the parties intended to be bound by an oral agreement by considering:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

*Powell v. Omnicom*, 497 F.3d 124, 129 (2d Cir. 2007); *see also Patel v. Long Island Univ.*, No. 23-7381, 2024 WL 4763927, at *1 (2d Cir. Nov. 13, 2024) (summary order) (same); *Tangtiwatanapaibul v. Tom & Toon, Inc.*, No. 20-CV-3852, 2022 WL 17574580, at *2 (2d Cir. Dec. 12, 2022) (summary order) (same).  "No single factor is decisive, but each provides significant guidance." *Ciaramella v. Reader's Digest Ass'n*, 131 F.3d 320, 323 (2d Cir. 1997) (citing *R.G. Grp., Inc. v. Horn & Hardart Co.*, 752 F.2d 69, 74–75 (2d Cir. 1984)).

Looking at the exhibits submitted by Plaintiff, it appears that neither party expressed an intent to be bound only by a writing.  (*See generally* Pl.'s Exs. 12–14 at 120–26; Pl.'s Exs. 21–22 at 153–61; Pl.'s Exs. 45–46 at 229–34).)  Next, Plaintiff avers that she "performed [her] obligations under th[e] contract" but "DBNA did not . . . ."  (TAC ¶¶ 264–65.)  Third, and perhaps most critical to the instant Motion, Plaintiff's email communications with Taylor do not evince that the Parties agreed to or even discussed paying Plaintiff for her work.  (*See generally* Pl.'s Exs. 12–14 at 120–26; Pl.'s Exs. 21–22 at 153–61; Pl.'s Exs. 45–46 at 229–34).)  Plaintiff avers that "[i]n all of [her] discussions with . . . Welsh and . . . Taylor, [she] stated—and believed that they had agreed—that [she] would be paid [her] market wages whenever DBNA had the budget to do so[,]" (TAC ¶ 143), but she does not allege what those "market wages" would be, and "[a]s price is an essential ingredient of every contract for the rendering of services, an agreement must be definite as to compensation" for it to be enforceable, *Parke-Hayden, Inc. v. Loews Theater Mgmt. Co.*, No. 91-CV-215, 1993 WL 287815, at *6 (S.D.N.Y. July 28, 1993)

(quoting *Cooper Square Realty, Inc. v. A.R.S. Mgmt., Ltd.*, 581 N.Y.S.2d 50, 51 (App. Div. 1992)); *see also Surgicore v. Empire HealthChoice Assurance, Inc.*, No. 19-CV-3485, 2021 WL 1092029, at *5 (E.D.N.Y. March 22, 2021) ("Price or compensation are material terms in a contract requiring definiteness." (quoting *Major League Baseball Props., Inc. v. Opening Day Prods., Inc.*, 385 F. Supp. 2d 256, 271 (S.D.N.Y. 2005) (quotation marks omitted)).  Although "[a]n agreement's price term might be sufficiently definite if 'the amount can be determined objectively without the need for new expressions by the parties[,]'" *Piven v. Wolf Haldenstein Adler Freeman & Herz L.L.P.*, No. 08-CV-10578, 2010 WL 1257326, at *4 (S.D.N.Y. Mar. 12, 2010), courts have repeatedly found vague and generalized promises like those for "market rate" wages insufficiently definite to form a contract.  *See Gutkowski v. Steinbrenner*, 680 F. Supp. 2d 602, 611–12 (S.D.N.Y. 2010) (collecting cases); *cf. Martinez v. Agway Energy Servs., LLC*, 88 F.4th 401, 416 (2d Cir. 2023) ("Without a satisfactory definition of 'competitive,' any contractual promise to charge a competitive rate lacks the definiteness that New York law requires to make it enforceable." (citation omitted)).  Lastly, when forming an employment contract, the requisite "meeting-of-the-minds usually is memorialized in writing at the outset of the employment relationship."  *Stein v. Guardsmark, LLC*, No. 12-CV-4739, 2013 WL 3809463, at *7 (S.D.N.Y. July 23, 2013) (internal citation and quotation marks omitted).  Based on these factors, the Court concludes that Plaintiff has not alleged sufficient facts to establish the existence of a contract.  Therefore, the Court does not have personal jurisdiction over DBNA on this theory.  *See Mercator*, 159 F. Supp. 3d at 472 ("Because the plaintiff has not sufficiently alleged a contract with these defendants, there is no personal jurisdiction over these defendants." (citation omitted)); *Lana Mora, Inc.*, 672 F. Supp. at 127–28 ("Where there is no contractual relationship, there can be no personal jurisdiction under [Section] 302(a)(1) based upon a

34

defendant's having contracted . . . ."); *cf., Shipco Transp., Inc. v. Roll on Roll off Co., LLC*, 684 F. Supp. 3d 156, 160 (S.D.N.Y. 2023) (holding the "[c]ourt ha[d] no contractual basis for exercising jurisdiction over [the defendant]" where the document containing forum selection clause was not a contract between the plaintiff and defendant).

Further, even if Plaintiff had pled sufficient facts to support her argument that she had a contract with DBNA, "[t]he fact that a contract has been made in New York does not by itself guarantee jurisdiction if other contacts [with New York] are lacking, although it is always a factor to be considered."  David D. Siegel & Patrick M. Connors, New York Practice § 86 (6th ed. 2018) (citations omitted); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."); *Buffalo Intelligent Tech. Sys., LLC v. March, LLC*, No. 24-CV-1111, 2025 WL 2099969, at *7 (W.D.N.Y. June 10, 2025) ("[T]he existence of a contract with an out-of-state party does not automatically confer jurisdiction [in New York]." (citations omitted)); *Blau v. Allianz Life Ins. Co. of N. Am.*, 124 F. Supp. 3d 161, 178–79 (E.D.N.Y. 2015) ("[T]he existence of a contract between an out-of-state defendant and a citizen of the forum state, on its own, generally does not establish personal jurisdiction over the defendant, even for an action arising out of such contract." (citation omitted)); *Smit v. Isiklar Holdings A.S.*, 354 F. Supp. 2d 260, 265 (S.D.N.Y. 2005) ("The execution of an agreement in New York, without more, does not constitute 'transacting business' in New York for purposes of [Section] 302." (citation omitted)).  In determining whether a contract suffices to provide personal jurisdiction over a non-domiciliary defendant, courts look to:

> 1) whether the defendant has an on-going contractual relationship with a New York entity; 2) whether the contract was negotiated or executed in New York; 3)

35

whether the defendant visited New York to meet with parties after the contract was executed; 4) whether the contract contains a choice-of-law provision; and 5) whether the contract requires the defendant to send notices or payments into New York.

*Weiss v. Barc, Inc.*, No. 12-CV-7571, 2013 WL 2355509, at *4 (S.D.N.Y. May 29, 2013) (citation omitted); *see also Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22–23 (2d Cir. 2004) (same); *Chalfin v. Go Big Solar, LLC*, No. 24-CV-4768, 2025 WL 2022012, at *6 (S.D.N.Y. July 17, 2025) (same), *appeal docketed*, No. 25-1967 (2d Cir. Aug. 14, 2025).  Although Plaintiff claims she was in New York during the negotiation and execution of the alleged contract, (TAC ¶¶ 131–32), her pleadings do not satisfy the other factors.  Specifically, Plaintiff does not allege that Defendants ever set foot in New York, Plaintiff's interactions with Defendants never required them to send notices or payments into New York, and Plaintiff has cited to no other basis to suggest the purported contract contained a choice of law provision, (*see generally* TAC).  Thus, even if Plaintiff had pled sufficient facts to establish a contract between her and DBNA, the Court would not have personal jurisdiction over DBNA under it.

Lastly, *Fremay, Inc. v. Modern Plastic Machinery Corp.,* 222 N.Y.S.2d 694 (App. Div. 1961), and *Henao v. Parts Authority, LLC*, 557 F. Supp. 3d 490 (S.D.N.Y. 2021), both of which Plaintiff cites for the proposition that this Court has personal jurisdiction over Defendants based on the alleged contract, (*see* TAC ¶¶ 104, 118, 132), do not help Plaintiff.  *Fremay* is inapposite to the instant Action because it is about whether that court had jurisdiction over the defendant under "Section 225 of the [New York] General Corporation Law."  222 N.Y.S.2d at 696–97.  Further, in the part of *Henao* immediately following the portion quoted by Plaintiff, the court goes on to remind the parties that "a plaintiff must [also] 'demonstrate that the exercise of personal jurisdiction comports with due process.'"  557 F. Supp. 3d at 495 (quoting *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018)), so contrary to Plaintiff's

36

assertions, asserting personal jurisdiction over an out-of-state defendant under New York's long arm statute requires more than just a single transaction in the forum state.

Because Plaintiff has failed to plead sufficient facts to allege that she and DBNA had a contract, the Court does not have contract-based personal jurisdiction over DBNA, and Plaintiff's contract-based claims against DBNA are dismissed.

### iv.  Consent

Lastly, Plaintiff claims that Defendants consented to this Court's jurisdiction because "[f]or months" their attorneys "litigated [this Action] both in writing and over the phone . . . without raising any objections to jurisdiction."  (TAC ¶ 103; *see also id.* ¶ 116 ("Although these attorneys did not appear in the New York action, they claimed to represent their co-[D]efendants in the New York action for three [] weeks.  There's simply no precedent requiring a formal appearance; claiming to be an attorney is acting as an attorney, thereby consenting [to jurisdiction].").)  Although Plaintiff does not cite any exhibits or provide any additional details to support her argument, based on her description of the events, the Court interprets this part of her claim as referring to emails Plaintiff's husband, non-party Christopher Paige,[8] exchanged with non-party April Lucas, a partner at McGinnis, in February and March 2024.  (*See* Pl.'s Exs. 35–39 at 202–13.)  Notably, these communications occurred prior to the commencement of this

---

[8] Plaintiff was represented in state court by her husband, Christopher Paige, a licensed attorney, as indicated by his signature on the summons filed in Westchester County Supreme Court.  (*See* Summons With Notice 3.)  Plaintiff claims that her husband, "who is having issues with his health, . . . no longer represents [her] as [she] ha[s] chosen to represent [her]self."  (TAC ¶ 96.)  The Court will accept that representation for purposes of resolving instant Motions, but notes the strong similarity in tone and style between the Third Amended Complaint and the emails written by Christopher Paige prior to this Action in which he attempted to negotiate with Defendants.  (*Compare* TAC *with* Pl.'s Exs. 35–39 at 202–13).

Action, (*Contrast* Notice of Removal ¶ 3 (noting Plaintiff commenced this Action on March 21, 2024) *with* Pl.'s Ex. 35 at 203 (dated February14, 2024); Pl.'s Ex. 36 at 206 (dated March 6, 2024); Pl.'s Ex. 37 at 209 (dated March 6, 2024), Pl.'s Ex. 38 at 211 (dated March 6, 2024); Pl.'s Ex. 39 at 213 (dated March 7, 2024)), and none of the emails mention that this Action would be filed in New York, (*see generally* Pl.'s Exs. 35–39 at 203–13). Because "a party cannot be deemed to have waived objections or defenses which were not known to be available at the time they could first have been made," *Hawknet, Ltd. v. Overseas Shipping Agencies*, 590 F.3d 87, 92 (2d Cir. 2009) (citation omitted), Defendants' pre-litigation communications do not amount to consent to personal jurisdiction in this forum because they were unaware that the Action would be filed in New York, *see In re Blutrich Herman & Miller*, 227 B.R. 53, 59–60 (Bankr. S.D.N.Y. 1998) ("[A] party without notice of a pending action against him or her cannot possibly voluntarily submit to or waive any objection to a court's jurisdiction in an action of which he or she has no knowledge." (citation omitted)).

Further, "[w]hile a party may consent to [personal] jurisdiction, jurisdiction does not attach until proper service of process has been completed." *Societe Idex v. Mediterranean Lines*, No. 81-CV-7348, 1982 WL 195707, at *3 (S.D.N.Y. Sept. 30, 1982) (collecting cases); *see also Peifa Xu v. Gridsum Holding, Inc.*, No. 18-CV-3655, 2020 WL 1508748, at *13 (S.D.N.Y. Mar. 30, 2020) ("Simply put, this [c]ourt cannot exercise personal jurisdiction over any non-consenting party until that party is properly served." (citation omitted)). Thus, Defendants could not have consented to personal jurisdiction until *after* they were served on March 26 and 27, 2024, (*see* Notice of Removal at 2), and Defendants have consistently contested personal jurisdiction since that time, (*see, e.g.*, Letter from Howard I. Elman, Esq. to Court (May 20, 2024) (Dkt. No. 25); Letter from Evan Weintraub, Esq. to Court (May 20, 2024) (Dkt. No. 26);

38

Letter from Jung H. Park, Esq. to Court (May 20, 2024) (Dkt. No. 27); Letter from Evan Weintraub, Esq. to Court (May 23, 2024) (Dkt. No. 34); McGinnis Mem. of Law in Supp. of Mot. to Dismiss (Dkt. No. 49); OFS Mem. of Law in Supp. of Mot. to Dismiss (Dkt. No. 55); DBNA Mem. of Law in Supp. of Mot. to Dismiss (Dkt. No. 58); Letter from Ryanne Hankla, Esq. to Court (Apr. 16, 2025) (Dkt. No. 116); Letter from Howard I. Elman, Esq. to Court (Apr. 16, 2025) (Dkt. No. 117); Letter from Evan Weintraub, Esq. to Court (Apr. 16, 2025) (Dkt. No. 118); DBNA Mem. 7–14; McGinnis Mem. 7–14; OFS Mem. 6–8 (collectively contesting jurisdiction).)

Lastly, to the extent these pre-litigation communications can be characterized as settlement negotiations, "the mere participation in settlement negotiations . . . is insufficient to cause waiver or forfeiture of personal jurisdiction." *Wave Studio, LLC v. Gen. Hotel Mgmt. Ltd.*, No. 13-CV-9239, 2024 WL 1574931, at *2 (S.D.N.Y. Mar. 12, 2024) (collecting cases); *see also Jaccard Corp. v. This LLC*, No. 15-CV-6248, 2016 WL 9460720, at *4 (W.D.N.Y. Apr. 28, 2016) ("The courts have long recognized strong policy reasons for encouraging parties to settle disputes by letter before initiating litigation.  Invoking personal jurisdiction on the basis of such settlement efforts would chill these policy goals." (citation and quotation marks omitted)).  Thus, for all of the reasons outlined above, Defendants have not consented to personal jurisdiction in this Action.

In sum, the Court concludes that it lacks personal jurisdiction over Defendants.  Because the Court reaches this conclusion, it does not reach the merits of Plaintiff's claims.  *See, e.g., Ditkoff v. Wolff*, No. 24-CV-1995, 2025 WL 919635, at *9 (S.D.N.Y. Mar. 26, 2025) ("The [c]ourt therefore lacks jurisdiction over [d]efendants, and, as such, the [c]ourt does not reach the merits of [p]laintiff's claims."); *Birittieri*, 2023 WL 2266481, at *6 ("Because this [c]ourt does

39

not have personal jurisdiction over the [d]efendant, this [c]ourt declines to rule on the merits of [p]laintiff's case." (citation omitted)); *Agbor v. Presidency of Rep. of Eq. Guinea*, No. 18-CV-8611, 2019 WL 3526550, at *3 (S.D.N.Y. Aug. 1, 2019) ("However, having found that it lacks personal jurisdiction over defendants, the [c]ourt may not rule on the merits of the case." (collecting cases)).

### 2.  Plaintiff's Miscellaneous Motions

At the beginning of her Third Amended Complaint, Plaintiff states that she "ha[s] combined [her] new legal arguments in response to [the Court's previous] Order and [her] [Third Amended] Complaint into one document" and requests the Court "consider this submission to be a [M]otion [for] [R]econsider[ation] . . . [and] a renewed request for jurisdictional discovery" in addition to an "amended complaint[.]"  (TAC ¶ 1.)  Plaintiff also "request[s] [the Court] deem this submission to be a [M]otion to [R]ecuse[.]"  (*Id.* ¶ 2.)  Plaintiff then goes on to respond to the Court's previous Opinion, (*see id.* ¶¶ 43–93), so the Court will consider this part of the Third Amended Complaint to be Plaintiff's Motion for Reconsideration and Motion for Recusal. Further, Plaintiff has filed several Motions to Transfer since the dismissal of her Second Amended Complaint and reiterates this request in her Opposition to Defendants' Motions to Dismiss.  (*See* Pl.'s DBNA Opp. 27–28; Pl.'s McGinnis Opp. 28; Pl.'s OFS Opp. 27–28; Pl.'s Mot. to Transfer (Dkt. No. 105).)  Plaintiff has also filed additional miscellaneous motions on the docket, including a Motion for Oral Argument (*see* Letter from Michele Paige to Court (June 26, 2025) (Dkt. No. 148)), and a Motion to Stay, (*see* Letter from Michele Paige to Court (June 26, 2025) (Dkt. No. 149)).  The Court will consider each of these in turn.

a. Motions for Reconsideration

Following the Court's dismissal of her Second Amended Complaint, Plaintiff has filed at least five Motions for Reconsideration, (*see* Mot. to Recuse (Dkt. No. 104); Letter from Michele Paige to Court (May 28, 2025) (Dkt. No. 129); Letter from Michele Paige to Court (Aug. 28, 2025) (Dkt. No. 168); Letter from Michele Paige to Court (Jan. 31, 2026) (Dkt. No. 192); Letter from Michele Paige to Court (Jan. 31, 2026 (Dkt. No. 195)), including one in her Third Amended Complaint, (*see* TAC ¶¶ 1, 43–57, 60, 62–87, 89–93). Although the Court has previously given ample explanation when denying Plaintiff's Motions for Reconsideration, (*see e.g.*, Order (Dkt. No. 166); Order (Dkt. No. 196)), it reiterates its analysis below.

"Motions for reconsideration are governed by Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3, which are meant to ensure finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Rivas v. Melecio*, No. 23-CV-5718, 2024 WL 1096065, at *1 (E.D.N.Y. Feb. 21, 2024) (quoting *Arthur Glick Truck Sales, Inc. v. Stuphen E. Corp.*, 965 F. Supp. 2d 402, 404 (S.D.N.Y. 2013), *aff'd*, 577 F. App'x 11 (2d Cir. 2014) (summary order)); *see also Bais Yaakov v. Educ. Testing Serv.*, No. 13-CV-4577, 2018 WL 11396029, at *2 (S.D.N.Y. June 6, 2018) (same). In the Second Circuit, motions for reconsideration are judged by a strict standard and should not be granted where the moving party seeks solely to relitigate an issue already decided. *See Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 118 n.94 (2d Cir. 2021) (citing *Schrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)); *see also In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543, 2017 WL 3443623, at *1 (S.D.N.Y. Aug. 9, 2017) ("It is well established that the rules permitting motions for reconsideration must be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by

41

the [c]ourt." (citation omitted and quotation marks omitted)).  "Motions for reconsideration are not intended to be 'a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple.'" *Fecteau v. City of Mount Vernon*, No. 23-CV-9173, 2025 WL 873018, at *19 (S.D.N.Y. Mar. 20, 2025) (quoting *Harriram v. City Univ. of N.Y.*, No. 22-CV-9712, 2024 WL 4553906, at *3 (S.D.N.Y. Oct. 22, 2024) (denying a motion for reconsideration where plaintiff failed to provide "data that the court overlooked")).  "A movant may not 'rely upon facts, issues, or arguments that were previously available but not presented to the court.'" *Azzarmi v. Neubauer*, No. 20-CV-9155, 2023 WL 6255678, at *1 (S.D.N.Y. Sept. 26, 2023) (quoting *Indergit v. Rite Aid Corp.*, 52 F. Supp. 3d 522, 523 (S.D.N.Y. 2014)); *see also Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 146 (2d Cir. 2012) (noting that evidence that the moving party "had known about . . . for over a year" was neither new nor newly discovered); *Williams v. Westchester Med. Ctr. Health Network*, No. 21-CV-3746, 2025 WL 1002010, at *1 (S.D.N.Y. Apr. 2, 2025) ("[R]econsideration is appropriate when new evidence was not previously available despite diligence.").  "A motion for reconsideration should be granted only when the [movant] identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Alvarez v. City of New York*, No. 11-CV-5464, 2017 WL 6033425, at *2 (S.D.N.Y. Dec. 5, 2017) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)).

Plaintiff raises the same arguments previously dismissed and fails to assert any intervening change of controlling law or new evidence that warrant reconsideration.  Instead, Plaintiff doubles down on the same conclusory arguments from her Second Amended Complaint, (*see* TAC ¶¶ 52–57), and systematically picks apart the Court's prior Opinion, arguing why each

42

case cited in the Court's previous Opinion is inapplicable to her Second Amended Complaint and questioning the Court's use of unpublished cases, (*see* TAC ¶¶ 45, 47–50, 62–87).  However, "[i]t is 'black letter law' that a motion for reconsideration cannot '. . . be used as a vehicle for relitigating issues already decided by the Court.'"  *New York v. Trump*, 778 F. Supp. 3d 578, 586 (S.D.N.Y. 2025) (quoting *Davidson v. Scully*, 172 F. Supp. 2d 458, 461 (2001)); *see also Schrader*, 70 F.3d at 257 ("[A] a motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided."); *Grand River Enters. Six Nations, Ltd. v. Biello*, No. 16-CV-1087, 2020 WL 1027803, at *3 (D. Conn. Mar. 3, 2020) ("A motion for reconsideration is not an occasion for a losing party simply to re-litigate arguments that were previously raised and considered by the Court." (citation omitted).  To the extent Plaintiff wishes to rehash her prior arguments, the Court will not consider them.

To the extent Plaintiff's Motions can be interpreted as arguing the Court committed clear error by citing unpublished cases, Plaintiff fundamentally misunderstands the role of binding and persuasive authority in a court's legal analysis.[9]  The Second Circuit has made clear that published district court opinions are not more persuasive than unpublished opinions.  *See Lebron v. Sanders*, 557 F.3d 76, 79 n.7 (2d Cir. 2009) ("We do not suggest that published district court opinions are more persuasive than unpublished district court opinions[.]").  Additionally, "[u]nlike appellate court decisions, district court decisions are not precedential in the strict sense of the word: they are not binding on other courts or judges—even judges in the same district—in subsequent cases."  *Tronox Inc. v. Andarko Petrol. Corp.*, No. 14-CV-5495, 2025 WL 2242166,

---

[9] While the Court would not expect a layperson to understand this nuance, Plaintiff is no ordinary pro se litigant—she claims, no fewer than seven times, to have graduated from Yale Law School in her Third Amended Complaint.  (*See* TAC ¶¶ 26(a), 198, 226, 256, 292, 333, 353.)

at *3 (S.D.N.Y. Aug. 6, 2025) (citation omitted); *see also Tiffany LLC v. Andrew*, 276 F.R.D. 143, 154 (S.D.N.Y. 2011) ("An opinion of a [d]istrict [j]udge does not bind the court in which the [d]istrict [j]udge sits." (citation omitted)); *Arculeo v. On-Site Sales & Mktg., LLC*, 321 F. Supp. 2d 604, 609 (S.D.N.Y. 2004) ("[T]he decisions of district courts, even those located within the same district, are not binding on other district courts . . . ."). In support of her Motions, Plaintiff cites *Henao v. Parts Authority, LCC*, 557 F. Supp. 3d 490 (S.D.N.Y. 2021), but this case is not an intervening change of controlling law because it was decided prior to the Court's previous Opinion, and as explained above, because *Henao* is a district court case, it is not binding on this Court.

Further, Plaintiff makes much of the Court's citation to non-employment cases. (*See* TAC ¶¶ 65, 69–71, 73, 74–76, 78–87.) To the extent this claim can be interpreted as attempting to point out clear error in the Court's prior decision, "[t]he fact that the[se] cases did not involve a similar fact pattern is irrelevant" because "the[se] cases were cited only for . . . general rule[s] . . ., a concept apparently lost on" Plaintiff. *L&B 57th St., Inc. v. Blanchard*, No. 95-CV-3450, 1997 WL 30945, at *1 (S.D.N.Y. Jan. 27, 1997). "Indeed, as [P]laintiff's own description of the cases persuasively demonstrates," the general principles for which these cases were cited "ha[ve] been applied in a wide variety of factual situations." *Id.*; *see also Trisvan v. Annucci*, 284 F. Supp. 3d 288, 301 (E.D.N.Y. 2018) ("[C]ourts often borrow legal principles developed in one context and apply them in another." (collecting cases)).

In sum, Plaintiff's Motions for Reconsideration are nothing more than a rehashing of the Court's prior decision, and the Court reminds Plaintiff that "a motion for reconsideration is not a substitute for [an] appeal." *Scienton Techs., Inc. v. Comput. Assocs. Int'l, Inc.*, No. 04-CV-2652, 2013 WL 1856653, at *3 (E.D.N.Y. May 1, 2013) (citation and quotation marks omitted); *see*

44

*also Massop v. U.S. Postal Serv.*, 493 F. App'x 231, 231 (2d Cir. 2012) (summary order) ("Finally, to the extent [the plaintiff] was using the motion for reconsideration to challenge the merits of the district court's judgment, she was improperly using the motion as a substitute for appeal." (citation omitted)).  Accordingly, Plaintiff's Motions for Reconsideration are denied. *See Flores v. Bergtraum*, No. 20-CV-1240, 2023 WL 6258675, at *2 (S.D.N.Y. Sept. 26, 2023) (denying a motion for reconsideration where the movant failed to identify an intervening change of controlling law, new evidence, or the need to correct a clear error).

### b.  Motions for Recusal

Plaintiff's Motion for Recusal is similarly unavailing.  At the outset, the Court wishes to note that Plaintiff has filed no fewer than 13 Motions to Recuse since the dismissal of her Second Amended Complaint, all of which make the same argument as the Motion for Recusal included in her Third Amended Complaint.  (*See generally* Dkt.)  These requests center around Plaintiff's wholly unsupported accusations that the Court "discriminated against [Plaintiff] on the basis of gender[,]" (TAC ¶ 88), exhibited "prejudice and/or religious animus[,]" (*id.* ¶ 103), "adopt[ed] . . . sexist stereotypes" and stereotyp[ed] . . . Christians who homeschool their children[,] (*id.* ¶ 2), "constant[ly] refer[red] to [Plaintiff] using sexist slurs," (Mot. to Recuse 2 (Dkt. No. 193)), and characterize the Court as "a liar, a bigot, and a fool[,]" (Pl.'s Letter to Court (Mar. 13, 2026) (Dkt. No. 198)).  As the record reflects, the Court has done no such thing.  What the Court has done "is give significant leeway to [a] pro se litigant[] and [her] filings[]." *In re Paige*, 738 F. App'x 85, 86 (3d Cir. 2018).

"Generally, claims of judicial bias must be based on extrajudicial matters, and adverse rulings, without more, will rarely suffice to provide a reasonable basis for questioning a judge's impartiality." *Chen v. Chen Qualified Settlement Fund*, 552 F.3d 218, 227 (2d Cir. 2009); *see*

*also Liteky v. United States*, 510 U.S. 540, 555 (1994) (noting that "rulings alone almost never constitute a valid basis for a bias or partiality motion[, and that] [i]n and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved.  Almost invariably, they are proper grounds for appeal, not for recusal.").

In this case, Plaintiff merely expresses disagreement with the Court's prior Opinion and chooses to portray it as an act of discrimination.  (*See* TAC ¶¶ 2–3, 45–46, 50–51, 58, 61, 109.)  Without any facts to substantiate that claim, and there are none, it is clear that her recusal motions are based solely on a disagreement with the Court's ruling.  While Plaintiff is free to disagree with the Court's decisions, "a judge's 'rulings and conduct' during the case 'cannot be used to substantiate a recusal motion."  *Moussa v. Obama*, No. 22-CV-4625, 2023 WL 1801997, at *2 (E.D.N.Y. Feb. 6, 2023) (quoting *United States v. Occhipinti*, 851 F. Supp. 523, 526 (S.D.N.Y. 1993)).  Accordingly, Plaintiff's Motions for Recusal are, once again, denied.

### c.  Motion to Transfer

Lastly, after the Court dismissed Plaintiff's Second Amended Complaint with leave to amend, Plaintiff repeatedly requested the Court transfer this Action to the Western District of Texas, (*see* Letter from Michele Paige to Court (Mar. 17, 2025) (Dkt. No. 105)), or other unspecified locations, (*see, e.g.*, Letter from Michele Paige to Court (Jan. 31, 2026) (Dkt. 192); Letter from Michele Paige to Court (Feb. 3, 2026) (Dkt. 195)), a request she reiterates in her Opposition to Defendants' instant Motions to Dismiss, (*see* Pl.'s McGinnis Opp. 33 (calling the Court "a liar and a bigot who ignored the facts and law to discriminate against [her]" and stating that "[a]t the very least, [the Court] must . . . transfer this case."); Pl.'s DBNA Opp. 33 (same);

46

Pl.'s OFS Opp. 33 (alleging the Court "used non-employment cases to fabricate a new standard for employment cases in contravention of [precedent,]" accusing the Court of "acting as if" it were "Defendants' co-counsel[,]" characterizing the Court's previous rulings as "unethical[,]" stating that "[n]o reasonable person would have any confidence in [the Court's] integrity, impartiality, or competence" and demanding, "at the very least[,]" that the Court "transfer this case").

Even when a court lacks personal jurisdiction over a defendant, 28 U.S.C. § 1406(a) ("Section 1406") permits it to transfer an action to another district where the case could have been brought if it is in "the interest of justice" to do so. *See Daniel v. Am Bd. of Emergency Med.*, 428 F.3d 408, 435 (2d Cir. 2005) (collecting cases). Section 1406 was enacted to protect "plaintiffs who were diligent in initiating suit [from] forfeit[ing] their action as a result of venue quirks of which responsible plaintiffs would not necessarily have known." *Spar, Inc. v. Info. Res., Inc.*, 956 F.2d 392, 394 (2d Cir. 1992). However, Section 1406 should not be used to "reward plaintiffs for their lack of diligence in choosing a proper forum." *Id.*; *Krisko v. Marvel Ent., Inc.*, 473 F. Supp. 3d 288, 301 (S.D.N.Y. 2020) (same). In fact, the Second Circuit has explicitly warned against transfer "when it would 'reward plaintiffs for their lack of diligence in choosing a proper forum' and allow them to 'bargain hunt' for forums after commencing an action." *Krisko*, 473 F. Supp. 3d at 301 (quoting *Spar*, 956 F.2d at 394–95). Further, district "courts transfer cases only to districts that would otherwise have personal jurisdiction over the defendants, and the proponents of transfer bear the burden of establishing that the venue and jurisdiction are proper in the proposed district court." *Id*.

Here, Plaintiff offers no reason to transfer this Action beyond her displeasure with this Court's decision to dismiss her Second Amended Complaint. (*See generally* Dkt.) Additionally,

47

she does not meet her burden of establishing that the district to which she wishes to transfer the Action would have jurisdiction over Defendants—in one recent letter motion, she "request[s] that [the Court] follow and implement [its] own prior ruling . . . [and] transfer this case to wherever [it] thinks New York employment cases are litigated when they can't be litigated in New York." (Letter from Michele Paige to Court (Jan. 31, 2026) 2 (Dkt. No. 192).) But this is not the Court's duty—"[t]he party requesting the transfer bears the burden of making a 'strong case for transfer.'" *Megna v. Biocomp Lab'ys*, 220 F. Supp. 3d 496, 497 (S.D.N.Y. 2016) (quoting *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 113 (2d Cir. 2010)). Accordingly, Plaintiff's Motion to Transfer is denied.

### d.  Motion for Oral Argument

Plaintiff has also requested oral argument on several of her pending motions. (*See* Mot. for Oral Arg.) The Second Circuit has opined that "[c]ourts have broad discretion to determine how much, if any, oral argument is appropriate in a given case." *Doctor's Assoc., Inc. v. Distajo*, 66 F.3d 438, 448 (2d Cir. 1995); *see also In re Garrett Mot. Inc. Sec. Litig.*, No. 20-CV-7992, 2023 WL 2744029, at *1 n.1 (Mar. 31, 2023) (denying motion for oral argument where "the briefing was extensive and oral argument would not be helpful to the [c]ourt."); *Green v. WCI Holdings Corp.*, 136 F.3d 313, 316 (2d Cir. 1998) ("[T]he 'hearing' requirements of Rule 12 and Rule 56 do not mean that an oral hearing is necessary."). In the exercise of that discretion, the Court denies Plaintiff's requests for oral argument because it would not be helpful to the Court and is not necessary given the voluminous nature of Plaintiff's briefings. *See Gabay v. Roadway Movers, Inc.*, 671 F. Supp. 3d 371, 375 n.1 (S.D.N.Y. 2023) (denying motion for oral argument when "oral argument would not be helpful to the [c]ourt" (citation omitted)); *AD/SAT, Div. of*

48

*Skylight, Inc. v. Associated Press*, 181 F.3d 216, 226 (2d Cir. 1999) (noting that "a district court's decision whether to permit oral argument rests within its discretion." (citation omitted).[10]

### III.  Conclusion

For the reasons set forth above, Defendants' Motions are GRANTED, and Plaintiff's Third Amended Complaint is dismissed.  This dismissal is without prejudice to Plaintiff bringing this Action elsewhere because a "dismissal for lack of jurisdiction must be without prejudice," *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 126 (2d Cir. 2022), but the Court does not grant Plaintiff leave to amend because "even with the benefit" of this Court's prior decision and grants of leave to amend, Plaintiff has "failed to cure" the deficiencies in her complaints, *Metzler Inv. GmbH v. Chipotle Mexican Grill*, 970 F.3d 133, 145 (2d Cir. 2020). *See NY United A-1 Constr., Inc. v. J.P. Mgmt., LLC*, No. 22-CV-4582, 2023 WL 2919090, at *2 (S.D.N.Y. Apr. 12, 2023) ("The [c]omplaint is dismissed for lack of subject matter jurisdiction and personal jurisdiction, without leave to replead in this court."); *Evans v. Adams*, 714 F. Supp. 3d 119, 128 (E.D.N.Y. 2024) (dismissing without prejudice for lack of subject matter jurisdiction but denying leave to amend).

---

[10] Plaintiff also filed a Motion to Stay in light of her mandamus petition to the Second Circuit.  (*See* Mot. for Stay (Dkt. No. 149).)  However, since the Second Circuit denied Plaintiff's petition, (*see* Mandate of U.S. Court of Appeals (Dkt. No. 179)), Plaintiff's Motion to Stay is now moot, and the Court will not consider it.

The Clerk of the Court is respectfully directed to terminate the pending Motions at Dkt.

Nos. 105, 129, 131, 134, 138, 142, 148, 149, and 193 and close the case.


SO ORDERED.

Dated:    March 31, 2026
          White Plains, New York

_____
KENNETH M. KARAS
United States District Judge

50